BIRD, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 27 — June 21, 1890.*

CRIMINAL LAW AND PRACTICE. *(1) Counsel to assist district attorney: Renouncing private employment. (2) Grand jury: Trial upon indictment or information. (3) Self-defense: Calling upon by-standers.*

1. It was not error for the trial court to appoint, as counsel to assist the district attorney in a prosecution for murder, an attorney who had been retained by the father of the deceased to assist in such prosecution, but who had received no compensation and, before his appointment by the court, renounced such employment.

2. Ch. 140, Laws of 1889, amending sec. 2545, R. S., and providing that "grand jurors shall be summoned to attend each term of the circuit court unless the judge thereof shall make, . . . at least fif-. teen days before the sitting of the said court, an order in writing directing such jury not to be summoned," did not apply to a term of court commencing less than fifteen days after the act took effect; and, although such order was not made, a person might be tried at such term for murder upon an information.

3. An assaulted party is not bound to call upon by-standers to restrain his assailant from making a threatened attack before making personal resistance to such attack.

ERROR to the Circuit Court for *Crawford* County.

The facts are stated in the opinion.

For the plaintiff in error there was a brief by *Frank W. Burnham*, attorney, and *John D. Wilson*, of counsel, and oral argument by *Mr. Wilson*.

The *Attorney General, L. K. Luse*, Assistant Attorney General, and *Michael Murphy*, district attorney of Richland county, for the defendant in error.

TAYLOR, J. The plaintiff in error was arrested and charged with the murder of one Oscar Hallin on the 6th day of February, 1889, in the saloon of one William Brandt, in the city of Richland Center, in the county of Richland. The plaintiff in error, after his arrest, waived an examination

Bird vs. The State.

before the justice, and at the next term of the circuit court for Richland county, in April, 1889, the district attorney of said county filed an information against him in said court charging him with the crime of murder. The defendant was duly arraigned in said court upon said information, and pleaded not guilty to the charge contained in the information; and thereafter, upon the application of the said plaintiff in error, the place of trial was changed to Crawford county. At the May term of the circuit court for Crawford county the plaintiff in error was tried upon said information; and upon such trial the jury, by their verdict, found the said plaintiff in error guilty of the crime of murder as charged in the information. After such trial, and before judgment rendered, the plaintiff in error moved in arrest of judgment, and also for a new trial. The motion was denied, and thereupon the court sentenced the plaintiff in error to imprisonment in the state prison for life. A bill of exceptions was settled in the case, as provided by statute, and a writ of error was issued from this court to review the proceedings and judgment in the court below.

Upon the argument in this court the learned counsel for the plaintiff in error alleges several errors on account of which he claims the judgment should be reversed.

The first error alleged is that the circuit judge erred in appointing T. J. Brooks, Esq., an attorney of said court, to assist the district attorney in prosecuting the action against the defendant. The ground of this objection is based upon the alleged fact that said Brooks had been retained by the father of the deceased to assist in the prosecution of the plaintiff in error before he was appointed for that purpose by the court. Mr. Brooks, before he was appointed by the court, was examined by the court, and made the following statement: "Mr. Hallin [meaning the father of the deceased] stated to me that he wished me to take part in the

prosecution, and expected to pay me for it. At that time I was not aware of the decision of the supreme court precluding any private employment to assist in the prosecution of a criminal case, and I afterwards told him that I could not assist in the prosecution without an appointment by the court. If I am appointed to assist in the prosecution, I want no pay except such compensation as is provided by law in such cases. No money was paid to me by Mr. Hallin, and he does not expect to pay me a cent. At least, I have no expectation of being paid anything for what I do in this case."

The right of private counsel to appear and assist in the prosecution of a criminal action, against the consent of the accused, and without an appointment made by the trial judge, was discussed by this court in the case of *Biemel v. State*, 71 Wis. 444. In that case this court held that, "since the legislature has given the trial judge the power of appointing assistant counsel where he thinks the public interest requires it, and providing that such assistant counsel shall be paid out of the public funds, counsel should not be permitted to appear in the case, even at the request of the district attorney, when it appears that such counsel has been employed to appear by private parties, at whose request such counsel appears in the case, *and from whom he expects to receive compensation for his services.*" This court also said in that case that "had the learned judge of the municipal court, acting under the authority of ch. 354, Laws of 1887 [the statute which authorizes the judge, in his discretion, to appoint assistant counsel], appointed Mr. Austin as counsel to assist the district attorney in the prosecution, notwithstanding his previous employment by private parties, and Mr. Austin had accepted such appointment, and acted under it, a different question would be presented. It might be urged that in such case the acceptance of the appointment by the counsel and acting under it would be a

renunciation of his previous employment, and his services thereafter rendered would be solely for the state, and the only compensation he could legally demand would be that provided by the act of 1887."

In the case at bar, Mr. Brooks, before his appointment, had renounced his employment by the father of the deceased, and all claim upon him for compensation, in the prosecution of the action; and he accepted the appointment by the court with a clear understanding that he should receive no other compensation for his services than he was entitled to under such appointment and the act of 1887. The act of 1887 leaves it in the discretion of the trial judge to appoint or not appoint assistant counsel, and the judge must exercise his discretion in the selection as well as in the appointment of such assistant counsel. We see nothing in the appointment of Mr. Brooks, under all the circumstances, which would justify this court in holding that the learned circuit judge has abused his judicial discretion in making such appointment.

It is also urged as error that the defendant was tried upon an information and not upon an indictment. Originally, under the constitution of this state, no person could be tried for a felony except upon an indictment of a grand jury. See original sec. 8, art. I, of the constitution; 1 S. & B. Ann. Stats. 38. The section was amended in 1870 so as to read as follows: "No person shall be held to answer for a criminal offense without due process of law, and no person for the same offense shall be put twice in jeopardy of punishment, nor shall be compelled in any criminal case to be a witness against himself. All persons shall before conviction be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great; and the privilege of the writ of *habeas corpus* shall not be suspended unless when, in cases of rebellion or invasion, the public safety may require it." By this amend-

ment the words "without due process of law" were substituted for the words "unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases cognizable by justices of the peace, or arising in the army or navy, or in the militia when in actual service in time of war or public danger." After the amendment of the constitution in 1870, the legislature prescribed the methods of proceeding against persons guilty, of crimes against the state by ch. 137, Laws of 1871, which was afterwards embodied in the Revised Statutes of 1878 as ch. 188 of said statutes; and by sec. 31 of said ch. 137, Laws of 1871, the grand jury was practically abolished. See sec. 2545, R. S. 1878. By the amendment of sec. 2545, R. S. 1878, by sec. 5, ch. 140, Laws of 1889, grand juries are to be summoned as before the amendment to the constitution and the enactment of ch. 137, Laws of 1871, "to attend each term of the circuit court, unless the judges thereof shall make and file with the clerk, at least fifteen days before the sitting of the said court, an order in writing directing such jury not to be summoned."

It is claimed by the learned counsel for the plaintiff in error that, as the law now stands, no one can be proceeded against by information filed at any term of the circuit court at which a grand jury must be summoned as provided by said amended sec. 2545, R. S. We do not feel called upon in this case to decide the question raised by the learned counsel by this objection. The term of the court at which this information was filed commenced less than fifteen days after the act amending sec. 2545, R. S., went into effect. It was impossible, therefore, for the judge to make the order required by the amendment to prevent the calling of a grand jury at that term; and we conclude that the amended law did not apply to the term of court held at which this information was filed. We think the legislature only intended the law to apply to such terms of the several

circuit courts of the state as should be held more than fifteen days after the law took effect, so that the several judges might exercise their discretion in directing a grand jury not to be called at such term.

The third error assigned, that the verdict is not supported by the evidence, we think should not prevail. It was clearly a question for the jury whether the act was justifiable homicide, or murder in the first degree, or manslaughter in some of the degrees. Upon the whole evidence, these questions were peculiarly for the jury, and a verdict rendered under proper instructions of the trial judge could not be reversed by this court as unsupported by the evidence.

Several objections were taken to the instructions of the learned circuit judge to the jury, at least one of which, we think, was well taken. The contention made by the defendant on the trial was: *First*, that he killed the deceased in self-defense, in resisting a dangerous assault made upon him by the deceased, and was therefore guilty of no crime; and, *second*, that, if he was not justified in killing the deceased, the killing was done in the heat of passion, without intent to kill. There was evidence given on the part of the defendant which tended, at least, to sustain the contention made by him. In this state of the evidence, it was highly important to the defendant that the learned trial judge, if he undertook to instruct the jury particularly under what circumstances the defendant would be justified in resisting the assault made upon him by the deceased, by using a deadly weapon, should make no mistake in stating such circumstances. Upon this point the learned circuit judge instructed the jury at considerable length, and, as we think, none too favorably to the defendant, and finally closed his remarks upon this question with the following language:

"By imminent danger, in such case, must be understood a danger so great that the use of such deadly weapon in de-

fense is the only apparent reasonable way to prevent such apprehended great personal danger.

"If such person is assaulted in the manner supposed and can by retreating escape the danger, he is bound to do so rather than use a weapon likely to kill; or, if there be by-standers upon whom he may call to prevent the threatened assault and battery which may as to him mean great personal injury, he should, if there be time, call upon them to restrain the aggressor, before resorting to fire-arms.

"In short, in no case can one, in order to prevent a threatened assault and battery with the fist, no matter what may be the difference in size or strength between the parties, resort to a deadly weapon in his defense until he has done all that, under the circumstances, he reasonably otherwise could for his protection."

Without considering whether the first and third paragraphs of these instructions were properly given to the jury, and after a careful consideration of the matter, we are all agreed that so much of the second paragraph as instructs the jury that. "*if there be by-standers upon whom he may call to prevent the threatened assault and battery which may as to him mean great personal injury, he should, if there be time, call upon them to restrain the aggressor, before resorting to fire-arms,*" was erroneous. Under the evidence in the case, the learned judge by this instruction, in effect charged the jury that the defendant had failed to show any sufficient reason on his part for firing upon the deceased in the manner he did. The evidence clearly showed that there were several by-standers present at the time of the assault by the deceased and the firing by the defendant; that the defendant did not call upon them to restrain the deceased or to protect the defendant; and the evidence tends, at least, strongly to show that the defendant had time to call for help against the assault of the deceased be-

fore he fired upon him.    This instruction and the third paragraph, together, virtually instructed the jury that the defendant was not justified, under all the evidence, in firing upon the deceased at the time he did so fire.    While it might be proper to say to the jury that, in determining the question whether the accused was justified in firing upon his assailant, they might, among other things, consider the fact that the assault made upon him was made in the presence of a number of other men, who, it might be presumed, would not have permitted the deceased to inflict any great personal injury upon the defendant, we know of no rule of law, or of any judicial decisions, which make it the duty of the assaulted party to call upon the by-standers to restrain his assailant from making the threatened attack before making personal resistance to such attack.    In this instruction we think the learned judge clearly erred in stating it as a proposition of law that it was the duty of the accused to call upon the by-standers to aid him in resisting his assailant before he could resort to resistance with a deadly weapon.    As we are of the opinion that there was evidence in the case under which the defendant was entitled to have the question of his justification for killing the deceased submitted to the jury as a question of fact, we must hold that this error in instructing the jury was prejudicial to the rights of the defendant; and the judgment, for that error, must be reversed, and a new trial be had.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.    The warden of the state prison will surrender the plaintiff in error to the sheriff of Crawford county, who will hold him in custody until he shall be discharged by due course of law.