GEORGE BEDFORD v. STATE OF NEBRASKA.

FILED APRIL 26, 1893.    No. 4978.

1. **Criminal Law:** ADMISSION OF INCOMPETENT EVIDENCE:
ERROR NOT CURED BY ORDER TO STRIKE OUT. In a crim-
inal prosecution, evidence which on its face is clearly incompe-
tent and prejudicial to the accused should not be introduced,
and if the prosecution, without a promise to prove other facts to
render it competent, is permitted to introduce such evidence and
it is thus placed before the jury, an order of the court afterwards
made to strike it out does not wholly cure the wrong and may be
cause for reversing the judgment.

2. **Letters written by third parties** in another state to third
parties in this, but not in answer to letters written by the ac-
cused nor connected therewith, are not admissible in evidence
against the accused to prove a material fact in the case.

ERROR to the district court for Hall county. Tried be-
low before HARRISON, J.

*W. A. Prince,* for plaintiff in error.

*George H. Hastings, Attorney General,* for the state.

MAXWELL, CH. J.

The plaintiff in error was informed against under sec-
tion 164 of the Criminal Code, upon the charge that "On

the 14th day of May, 1891, in the county of Hall and the state of Nebraska aforesaid, did then and there unlawfully, willfully, and maliciously attempt to corrupt and influence one Clara Bedford a material and important witness in an action pending in the district court of Hall county, Nebraska, wherein the state of Nebraska was plaintiff and one Hezekiah Bedford, defendant, charged with incest committed with his daughter, the said Clara Bedford, in said county, and she, the said Clara Bedford, was a material and important witness for the state of Nebraska in said case against the said Hezekiah Bedford, as he, the said George Bedford, then and there well knew.    And he, the said George Bedford, did in said county and state then and there attempt to corrupt and influence the said Clara Bedford, witness as aforesaid, by offering to buy her clothes, pay her traveling expenses to the state of Illinois, and to keep her there if she, the said Clara Bedford, would leave the said county of Hall and state of Nebraska and go to the state of Illinois and secrete herself so she could not be procured as a witness on the part of the state of Nebraska in the said action against the said Hezekiah Bedford, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Nebraska."    The plaintiff in error, defendant below, pleaded not guilty, whereupon a jury was impaneled and he was found guilty as charged, and sentenced to imprisonment in the county jail for seven days and to pay a fine of $50 and costs.

Three errors are assigned which will be noticed in their order.

1. The testimony tends to show that on the 30th day of December, 1890, one Clara Bedford, a girl fourteen years of age, filed a complaint before a justice of the peace of Hall county in which she charged her father, Hezekiah Bedford, with the crime of incest; that an examination was had on the charge and the justice found probable cause

to hold the accused to answer to the district court; that
thereupon the bail was fixed at $500, which the accused was
unable to furnish, and he was therefore imprisoned in the
jail of Hall county. It also appears that Hezekiah Bed-
ford is very poor and that upon his imprisonment, if not
before, his family received aid from Hall county. It also
appears that the plaintiff in error is a resident of Decatur
county, Illinois, and appears to be in prosperous circum-
stances; that he owned one or more farms about nine miles
northwest of Grand Island, near Abbott station, and Heze-
kiah Bedford and his family resided on one of his farms.
It also appears that the plaintiff in error had, before the
difficulty spoken of, assisted his brother's family in a lim-
ited degree by providing clothing for them; that in the
spring of 1891 he came to this state to look after his farms
and perhaps assist his brother, although the proof upon
that point is very meager. It does appear, however, that
his brother was then in jail; that the family had been re-
ceiving aid from the county; that he carried some clothing
to the house for the younger children, but that he carried
the complaining witness to Grand Island, as he alleges, that
she might procure some clothing for herself. He admits
having taken her to a certain store (naming it) to procure
certain needed articles of clothing for which he was to pay.
This girl appears to be the oldest child, and the reason he
gives for not taking clothing for her to the house is, in
effect, that it was difficult to procure the proper size. No
one seems to have seen Clara Bedford leave Grand Island,
although, as will presently be seen, parties were watching
the trains to see that she did not leave. The plaintiff in
error seems to have expressed considerable anxiety about
his brother, and had a conversation with several persons in
regard to the same, among others Daniel Ramsa, called as
a witness on behalf of the state, and after testifying to
various conversations he had with the plaintiff in error he
was permitted to testify as follows against the objections of
the plaintiff in error:

Q. Dan, do you remember coming to my (the prosecuting officer's) room one morning early, about 5 or 6 o'clock and telling me to watch the trains, that George Bedford was going to run the girl out of the country?

Objected to, as immaterial, calling for a conclusion of the witness, and for the further reason that there is no proper foundation laid.   Overruled and exception taken.

Q. Can you remember doing that—yes or no; can you remember?

A. It was later than that.

Q. I want to know if you can remember that occurrence?

A. Yes.

Q. You remember that occurrence?

A. I don't remember stating it just like that.

Q. You remember coming to my room that morning?

A. Yes, sir.

Q. When was that in relation to the conversation you had with George Bedford at Whitney's stairs; before or after?

Objected to, as immaterial.   Overruled and exceptions taken.

A. Mr. Ryan had notified me that they were attempting to run the girl out of the country, trying to do so, and he wanted me to—if I knew anything about it, found out anything about it at all—to let him know; and I merely mistrusted that evening from my conversation with Mr. Bedford——

Objected to, as immaterial.   Overruled and exceptions taken.

A. I went and told Mr. Ryan that I thought——

Objected to, as immaterial.

A. That I thought that they was going to.   I didn't know for certain, but I thought they were going to.   If they hadn't, I thought they would that day.

Q. Who do you mean by "they"?

48

Objected to, as calling for an opinion of the witness and no foundation laid.   Overruled and exceptions taken.

A. Mr. Bedford's folks.

Q. What Bedford's folks?

A. Well, Mr. George Bedford and family up there, I suppose.

Q. Now, Dan, what county and state did these conversations that you have just related take place in?

A. This county, Grand Island, Hall county, Nebraska.

CROSS-EXAMINATION.

Q. You expected to be a witness in the case of the state of Nebraska against Hezekiah Bedford, didn't you?

A. I did.

Q. And have you ever told Mr. Bedford and myself that you didn't think there was any case there?

A. I might have said so.

Q. You told us that you thought you could bring evidence that would acquit Mr. Hezekiah Bedford, didn't you?

A. I have said lots of times, and would say it now, that I think there can be evidence fetched to impeach what evidence has been given.

Q. And that you thought——

COURT: This part of Mr. Ramsa's testimony with regard to his going and telling Mr. Ryan, unless there is some further foundation for it than has been given, may be stricken out.

We know of no rule that will permit the admission of evidence plainly incompetent on its face over the objection of the party accused where there is no promise by the party offering it to connect with other evidence so as to render it competent; and after it is before the jury strike it out. The court may be deceived as to the effect of certain evidence offered, or may believe that it is properly admissible, and after it is before the jury see that it is not, and therefore order it stricken out; but a court cannot deliberately permit a large amount of damaging evidence to be

admitted and have its effect on the jury and then cure the wrong by merely striking out the testimony improperly received.   The state should not resort to questionable practices to secure conviction.   Constitutional guarantees of a fair trial before an impartial jury amount to but little if tricks are sanctioned in the progress of a trial.   It is very evident that merely withdrawing the evidence from the jury did not remedy the wrong.

2. A letter from the wife of the plaintiff in error to the wife of Hezekiah Bedford, and also from the daughter to her mother, were offered and introduced in evidence against the objection of the plaintiff in error.   These letters were not written to the plaintiff in error, nor in answer to letters sent by him, nor are they in any way connected with this case.   Upon what theory they were admitted we are at a loss to know.   Letters of third persons are receivable in evidence as merely collateral, introductory, or incidental to or in illustration of the testimony which the witness gives. (1 Chitty, Cr. Law, 368, 369; 1 Phillips, Ev. [4th Am. ed.], 170.)   As, where a witness testified that he was induced to institute proceedings by letters of a third party. (*Lewis v. Manly*, 2 Yeates [Pa.], 200.)   But the letters could not be received as evidence of the facts stated in them. (5 Am. Law Reg., 468.)   "All acts, declarations, etc., made by third persons are obnoxious to two objections.   1. That they are *res inter alios acta*, and therefore irrelevant.   2. That they are mere hearsay, the assertions of parties without the sanction of an oath and an opportunity for cross-examination.   But entries against interest and in the course of business have always been considered as limitations of the rule excluding the first, and they are admitted not because the acts or admissions of third parties can bind others, but because they are evidence, just as the same party's oath would be, of the facts therein stated.   The peculiar circumstances under which they are made are considered quite as efficient a safeguard against falsehood as an oath, and

when the opportunity for cross-examination is forever lost by the party's death, such entries and declarations are freely admitted in evidence in suits between other parties." Letters of third parties in a foreign country in the ordinary course of business offering to sell goods of a certain grade for a price named have been received in evidence. (*In re Fennerstein's Champagne*, 5 Am. Law Reg., 464, and cases cited.) The case cited was decided by a divided court—three of the judges dissenting. No case has been cited, however, and we have been unable, after a pretty thorough search to find one, where letters of third parties addressed to third parties, and having no connection with the accused, were admissible in evidence to prove an essential fact in the prosecution of the case. It is very evident that these letters were improperly admitted and that the court erred in its ruling thereon.

3. As there must be a new trial we will not discuss the evidence. It rests largely in inferences. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.