### JOE MCKAY V. STATE OF NEBRASKA.

FILED OCTOBER 6, 1911.    No. 16,975.

1. **Information: SUFFICIENCY.** An information is fatally defective if it charges the commission of the offense as subsequent to the date upon which the information is filed, or on an otherwise impossible date.

2. **Criminal Law: INFORMATION: AMENDMENT: TRIAL.** And in such a case it is error for the trial court, after permitting an amendment curing such defect, to require the accused, over his objection, to immediately proceed with the trial, without arraignment under and plea to the only information filed which stated an offense, without giving him the statutory time in which to plead thereto, and before a jury which had been impaneled under a void information.

3. ———: **FORMER JEOPARDY.** Where one accused of a felony is put upon trial under an information void upon its face, and, after trial begun, the information is amended and the trial proceeded with, *held,* that the accused is not thereby placed in jeopardy a second time.

4. ———: **PRIVATE COUNSEL.** Under the provisions of section 20, ch. 7, Comp. St. 1911, private counsel can only be permitted to assist in the prosecution of a person charged with the crime of felony, when procured by the county attorney, under the direction of the district court.

5. ———: ———. And an order by the district court, at the opening of the trial, that an attorney appearing as private prosecutor, under the employment of outside parties, is "permitted" to assist in the prosecution, is not a compliance with the statutory provision.

6. ———: ———. And when timely objection is made by the accused to the participation of such private prosecutor in the prosecution of the case, it is error to overrule such objection.

7. ———: IRRELEVANT EVIDENCE. An accused in a criminal prosecution is entitled to a trial upon competent, relevant evidence; evidence which at least tends to establish his guilt or innocence; and evidence which has no such tendency, but which, if effective at all, could only serve ·to excite the minds and inflame the passions of the jury, should not be admitted.

ERROR to the district court for Antelope county: ANSON A. WELCH, JUDGE. *Reversed.*

*William V. Allen, O. A. Williams* and *William L. Dowling,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

FAWCETT, J.

The plaintiff in error, whom we will hereinafter designate as defendant, was convicted of murder in the first degree in the district court for Antelope county. A motion for a new trial was overruled and a sentence of life imprisonment imposed.

Defendant was prosecuted under an information filed April 28, 1910, which, omitting the formal part, alleged: "That Joe McKay, late of the county aforesaid, on the 7th day of December, A. D. 1910, in the county of 'Antelope, and the state of Nebraska, aforesaid, then and there being, in and upon one Albert Brown, then and there being, unlawfully, feloniously, purposely, and of his deliberate and premeditated malice, did make an assault with the intent then and there of him, the said Joe McKay, him, the said Albert Brown, unlawfully, feloniously, purposely, and of his deliberate and premeditated malice to kill and murder," etc. On the next day, defendant assailed this information with a motion to quash and a demurrer, both of which were overruled in the order named. Defendant was thereupon arraigned and pleaded not guilty, and the case was assigned for trial May 2, 1910. On May 2 the case was called for trial and the impaneling

of the jury begun. May 3 the jury was finally selected and sworn. The opening statements were made to the jury by counsel for the state and defendant, respectively. W. L. Staples, a witness for the state, was then called. After being interrogated as to his name, residence and official position, he was asked whether or not he had made a trip to Brunswick, whereupon the defendant objected to the introduction of any evidence upon the grounds: "(4) Because said complaint does not state an offense punishable by the laws of the state of Nebraska;" and "(6) because the information charges the commission of the crime on an impossible date, to wit, the 7th day of December, A. D. 1910, which has not yet arrived, and not on a date at any time prior to the filing of the information." Thereupon the court took a recess until the next morning, May 4, on which day, at the opening of court, the county attorney filed a motion for "leave of this court to correct the clerical error appearing near the end of line seven in the body of said information by striking out the numerals, to wit, 1910, there appearing, and inserting in their stead the numerals, to wit, 1909." Defendant objected to the proposed amendment upon the grounds that the defendant was prepared to go to trial on the information as it stood, but was wholly unprepared to proceed to trial under the proposed change ·in the information; that no copy of the information as it was proposed to be amended had been served upon defendant or his counsel, as required by statute; and that defendant had a statutory and constitutional right to 24 hours, after service upon him of the information as amended, within which to plead thereto. These objections were overruled. The court then, over defendant's objection, permitted the state to introduce the clerk of the court and the county attorney as witnesses for the purpose of laying the foundation for the state's motion to amend the information, at the conclusion of which the court sustained the motion to amend the information, and permitted the same to be amended by drawing a line

8

through the figures "1910" without obliterating them, and by placing over them the figures "1909," and ordered that the defendant be served with a copy of the information as corrected. The information was thereupon amended as directed by the court, reverified and refiled. The information as amended was served upon defendant at 8:49 in the evening of that day. On the next morning, May 5, on the convening of court, defendant tendered a plea in abatement or plea in bar "to the further proceeding of the court in this case," and also moved the court to exclude the Honorable M. F. Harrington, attorney at law, from participating in the prosecution of the case, upon the grounds that he had not been appointed by the court, as provided by statute, to assist in the prosecution; that he is not a deputy county attorney of Antelope county, or acting officially or under the solemnity of official oath in connection with the case; and, third, because his employment and payment are by private parties. All of defendant's objections and his motion were overruled, and at 10 o'clock A. M. of that day the jury were called into the box, and defendant's objection to the introduction of any evidence was then overruled, and, over the objection of defendant, the trial proceeded.

The objections of defendant to the information upon which he was arraigned, and under which the trial was entered upon, were well taken and should have been sustained. It charged the commission of the crime upon an impossible date, viz., a date nearly eight months in the future. Joyce, Indictments, sec. 319, announces the rule thus: "It is a general rule that an indictment is fatally defective if it charges the commission of the offense as subsequent to the date upon which the indictment is found, or on an otherwise impossible date." A large number of cases are cited by the author in support of the rule. Maxwell, Criminal Procedure (2d ed.) p. 67, says: "Time and place must be alleged as to every material fact in an indictment;" and on page 69 he says that time "should be stated with certainty. It must not be an impossible date,

such as a date after the indictment is found, and such defect is bad, even after verdict." In *State v. Smith*, 88 Ia. 178, it was held: "An indictment containing but one allegation as to the time of the commission of the offense, and stating that it was committed on a future day, is bad; the provisions of the code, sec. 4306, that no indictment is insufficient for want of an allegation of the time of any material fact when the time has once been stated, and of section 4305, that an indictment is good if it can be understood therefrom that the offense was committed some time prior to the finding of the indictment, being inapplicable." (55 N. W. 198.) In the opinion the court say: "This is not an omission to state the time when it had once been stated, but stating an impossible time. * * * It cannot be so understood from this indictment. It states but one date; a date not prior, but subsequent, to the finding of the indictment. * * * No indictment is sufficient that does not state the time at or about which the offense was committed, and, if it states an impossible time, it fails to charge an offense. We are in no doubt but that the first indictment was insufficient." In *Terrell v. State*, 165 Ind. 443, 2 L. R. A. n. s. 251, the supreme court of Indiana, in the opinion, and the annotator, in his notes, both exhaustively review the authorities on this point, which to our minds conclusively show that the original information was void, and hence did not state any offense.

Indeed, we do not understand the attorney general to contend that a conviction in this case could have been sustained under the information as originally filed, his contention throughout his brief being in support of the amendment permitted by the court. Upon that question we think the law must be taken as settled in this state. Section 436 of the criminal code provides: "And within twenty-four (24) hours after the filing of an indictment for felony, and in every other case on request, the clerk shall make and deliver to the sheriff, the defendant, or his counsel a copy of the indictment, and the sheriff on receiving

such copy shall serve the same upon the defendant; and
no one shall be, without his assent, arraigned or called on
to answer to any indictment until one day shall have
elapsed, after receiving in person or by counsel, or having
an opportunity to receive a copy of such indictment as
aforesaid."

In *Zink v. State*, 34 Neb. 37, the syllabus holds: "(2)
The right conferred upon the accused in a prosecution for
a felony by section 436 of the criminal code, to a copy of
the indictment or information, and one day to prepare
for trial, is a substantial right, to deny which is error. (3)
When an information for a felony is insufficient for want
of a material averment, it is error for the trial court to
permit an amendment supplying such deficiency, and re-
quire the accused, over his objection, to proceed with the
trial immediately, refusing him a copy of the amended
information, and the statutory time to plead thereto." In
the opinion by POST, J., we have a very lucid discussion of
this point. Among other things, it is said: "This right
to be furnished with a copy of the indictment or informa-
tion, and one day to prepare for trial, is a substantial
right which cannot be denied the accused in a prosecution
for a felony. It is no answer to say that the information
as filed contains sufficient matter to indicate the crime
and the person charged. We do not agree with the at-
torney general that there was no substantial defense the
accused could make before the amendment that was not
equally available after. He had before the amendment
this most potent of defenses, that he was not charged with
a crime and might object to being put on trial; or, if tried
and found guilty, that a motion in arrest of judgment
would be available." In *Barker v. State*, 54 Neb. 53, *Zink
v. State* is cited and followed, and the same rule again
announced. In *Zink v. State, supra*, it appears that the
amendment was made before the trial was actually en-
tered upon, but after it was made, and on the same day,
the court refused defendant's demand for the statutory
time in which to prepare for trial, and immediately put

him upon trial without further arraignment or plea to the information as amended. The case at bar is stronger. Here the court permitted the amendment, and deprived defendant of his statutory rights, after the trial had been entered upon and the examination of witnesses had begun. We do not agree with counsel for defendant that a trial under the amended information would be placing defendant in jeopardy a second time. The original information being void upon its face was no information at all. Hence, nothing under it could in any manner place the defendant in jeopardy. The court did right in permitting the amendment, but erred in forcing the defendant to immediately proceed with the trial, without arraignment under and plea to the only information filed which stated an offense, without giving him the statutory time in which to plead thereto, and before a jury which had been impaneled under a void information.

Defendant strongly insists that the court erred in permitting private counsel to conduct the case for the state. When counsel for the defendant moved the court to exclude Mr. Harrington from participating in the prosecution, as hereinbefore set out, the record contains this: "By Mr. Harrington: The parties agree that M. F. Harrington is not the deputy county attorney of Antelope county, has not been appointed by the court to prosecute this case, but has been permitted by the court to prosecute the same, and that he is employed and is paid by the brothers and sisters of the deceased, Albert Brown, and that he has not taken an oath as an officer or deputy county attorney or prosecutor of Antelope county. By the Court: The order of the court having been made at the commencement of the impanelment of the jury herein that M. F. Harrington is permitted to assist the county attorney in the prosecution of this case, and made a matter of record in this case, said order having been made in the presence of the defendant and his counsel; objection overruled by the court, to which ruling the defendant excepts."

It must be remembered that, at the time the court announced Mr. Harrington's permission to assist in the prosecution of the case, there was, as counsel for defendant well knew, no information on file under which defendant could be convicted of any crime. Hence, it was immaterial to him who conducted the prosecution; but, immediately upon the resumption of the trial on the amended information, counsel objected to the participation of Mr. Harrington in the case. If, therefore, the objection was good, we think it was timely. The bill of exceptions shows that all of the most important witnesses for the state were examined, and the principal witnesses for the defense, including the defendant himself, cross-examined by Mr. Harrington. It also appears that, over the objection of defendant, he made the closing argument to the jury. Section 16, ch. 7, Comp. St. 1911, makes it the duty of the county attorney to appear in the several courts of their respective counties and prosecute and defend on behalf of the state and county all actions, civil or criminal. Section 20 provides: "The county attorney may appoint one or more deputies, who shall act without any compensation from the county, to assist him in the discharge of his duties; provided, that the county attorney of any county may, under the direction of the district court, procure such assistance, in the trial of any person charged with the crime of felony, as he may deem necessary for the trial thereof, and such assistant or assistants shall be allowed such compensation as the county board shall determine for his services, to be paid by order on the county treasurer, upon presenting to said board the certificate of the district judge before whom said cause was tried, certifying to services rendered by such assistant or assistants." The stipulation of Mr. Harrington, which we have given above, does not state that the county attorney had, under the direction of the district court, procured his assistance, but, on the contrary, states that he had been employed and was being paid by the brothers and sisters of the deceased; that he had not been ap-

pointed by the court to prosecute the case, "but has been permitted by the court to prosecute the same." When placed upon the witness stand and examined by counsel for defendant, Mr. Harrington testified as follows: "Q. Now, have you ever been appointed under the statutes of this state, the method of which you understand well, to assist the county attorney in the prosecution of this case? A. No; not at public expense. Q. You have simply been permitted to appear? A. I don't know; I have been employed by relatives of the deceased, his brothers and sisters. Q. These relatives live in Bremer county, Iowa? A. I don't know what county. Q. Live near Gritole, in Iowa? A. Some of them, I think. Q. Any of them residents of this section? A. Not that I know of. Q. They employed you and are paying you? A. Yes, sir. Q. And you are appearing here in the capacity of private prosecutor? A. Yes, sir."

The question of the right of private counsel to appear in the prosecution of a criminal action has been before this court a number of times. The first reported case is *Polin v. State,* 14 Neb. 540. That case was decided in 1883. We there held, under the statute as it then existed, that the district attorney in a criminal trial may have the assistance of counsel employed on private account. The next case is *Bradshaw v. State,* 17 Neb. 147, where the rule in *Polin v. State* was reannounced. In that case, however, it appears from the opinion (p. 151), that "the record shows that before any evidence was introduced the district attorney stated to the court that he desired the assistance of Mr. Ashby in the trial of the cause on account of the magnitude of the case; that he had before that time requested his aid," etc. It will be observed that the facts in that case are very different from those in the case at bar. The next case was *Gandy v. State,* 27 Neb. 707, where the rule in *Polin v. State* was again announced. In that case it was insisted by counsel that *Polin v. State* and *Bradshaw v. State, supra,* arose under the statute existing prior to the passage of the act of

March 10, 1885 (laws 1885, ch. 40). The opinion then sets out the sections of the statute referred to, which are substantially the same as those now in force. In commenting thereon, COBB, J. (p. 723), said: "But it by no means appears that Martin and Falloon were deputies of the district attorney, appointed under the provisions of the twentieth section, but were his assistants procured by him under the direction of the district court in accordance with the proviso of said section, and were not required to take an official oath other than that as attorneys of the court." It appears from this statement in the opinion that the appearance of Messrs. Martin and Falloon in that case was strictly in accordance with the requirements of statute. The next case is *Blair v. State,* 72 Neb. 501. In that case the syllabus holds: "(10) An objection to the appearance of private counsel to assist the county attorney in conducting a criminal prosecution, to be available, should be made at a suitable time and in the proper manner, and must be supported by at least some showing that the county attorney did not request or require any assistance, and the court had not appointed such counsel for that purpose. (11) *Held,* That a general objection to the appearance of such counsel made during the trial in connection with the examination of a witness, and without any showing to support it, was properly overruled." In the opinion, BARNES, J. (p. 515), said: "No statement was made, or evidence offered, showing, or tending to show, that the prosecution had not requested the assistance of counsel, or that the court had not properly appointed them to render such assistance." Under those facts the decision in that case was clearly right. It is urged by the state that the question of employment of private counsel in the prosecution of a criminal case has been very recently discussed by this court in *Burnett v. State,* 88 Neb. 638. In that case the question was not raised at any time during the trial. Moreover, it could not have been raised under the statute above quoted, for the reason that that

case was a misdemeanor simply, and not a felony. To such a case the statute has no application. The only other authority cited by the state upon this point is the note to *State v. Bartlett,* 24 L. R. A. n. s. 564 (105 Me. 212). There the principal case was simply a misdemeanor. An examination of the copious notes will show that there is a conflict in the holdings of the different states upon this point. In his brief the attorney general says: "I cannot see that the statute of 1893, quoted by counsel, provides for any change of this general rule." In *Biemel v. State,* 71 Wis. 444, and *Bird v. State,* 77 Wis. 276, it is held that a statute very similar to ours does change the rule, and that under it an unofficial member of the bar may not assist in the prosecution for a fee to be paid by private persons. In support of his contention defendant cites *Biemel v. State,* 71 Wis. 444; *Meister v. People,* 31 Mich. 99; *People v. Bussy,* 82 Mich. 49, and other cases. We are impressed with and prefer to follow the rule announced by the supreme court of Wisconsin and the other states that are in harmony therewith. We are not unmindful of the fact that in many cases, particularly in sparsely settled counties, young lawyers of little experience are ofttimes, from necessity, elected to the office of county attorney, and, if the prosecution of felony cases were left to such a county attorney alone, crime might go unpunished. In such cases it is to the interest of the state that such a county attorney should have the assistance of outside counsel; and, if there were nothing in the statute providing therefor, as was the case when *Polin v. State, supra,* was decided, we would adhere to the rule there announced; but our legislature, by the statute under consideration, has wisely provided for just such emergencies. In doing so, however, it has not left it to outside parties to select the assistant counsel. It has imposed that duty upon the county attorney and district court, and has provided that the county attorney may, under the direction of the district court, procure such assistance. Counsel thus procured will not be actuated by

sordid motives. He will enter upon the discharge of his duties in the same spirit that any honorable county attorney would enter upon the same, viz., with the desire simply to see that justice is done. It is just as much the duty of a county attorney to see that an innocent man is not convicted as to see that the guilty receive their just deserts. As said by Mr. Chief Justice Christiancy, in *Hurd v. People,* 25 Mich. 405, 416: "The only legitimate object of the prosecution is 'to show the whole transaction, as it was, whether its tendency be to establish guilt or innocence.' The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent. His object, like that of the court, should be simply justice; and he has no right to sacrifice this to any pride of professional success." Counsel called to assist in the prosecution should govern his actions in like manner; and, when procured in the manner and for the compensation contemplated by the statute quoted, would doubtless do so; while counsel employed by outside parties, and, in the case of a homicide, by relatives of the deceased, would not feel bound by any such rule of conduct. He appears as private counsel simply, to represent the wishes, prejudice and animosities of his clients; to secure a conviction at all hazards. Such is not the policy of the law as indicated by the legislature, and we must decline to give it our sanction. In the case at bar there is nothing to show that the county attorney, who is a lawyer of known ability, requested the assistance of Mr. Harrington, nor that he had been in any manner previously consulted in reference thereto. The mere fact that the court permitted Mr. Harrington to assist in the prosecution cannot be held to be a compliance with the statute which provides that private counsel may be procured by the county attorney under the direction of the court. This provision of the statute calls for affirmative action by the county attorney and the court. Mere acquiescence in or assent to the appearance of private counsel does not constitute the affirmative action required by the statute and is not sufficient. If in the further

McKay v. State.

prosecution of this case the court and county attorney deem it necessary to have the assistance of outside counsel, it is their duty to follow the plain provisions of the statute in procuring the same.

As the case will have to be tried again, we will refrain from expressing any opinion as to the weight of the evidence, and will only consider one of the errors complained of in connection therewith. It is urged that the court erred in admitting in evidence exhibits 6, 7, 18, 19 and 22. Exhibits 6 and 7 were two shirts, stained with blood, 18 was the coat, 19 the vest, and 22 the cap of the deceased. The testimony of the coroner, who was also a practicing physician and surgeon, showed conclusively that the deceased had received three blows on the side of his head, each of which fractured his skull, and two of which penetrated the brain, either of which the doctor said was sufficient to have proved fatal. It was thus clearly established that the deceased had been murdered. There was no room for contention that his injuries had been self-inflicted, and the only question before the jury was: Did the defendant commit the murder? The admission of these blood-stained garments and the flaunting of them before the jury could in no manner identify, or even tend to identify, the prisoner at the bar as the murderer. We can conceive of no other purpose which these exhibits could subserve than to excite the passions and inflame the minds of the jury. A defendant who is being tried for any offense, and particularly one involving the possible taking of his life, is entitled to a trial upon competent evidence, evidence which tends to show his guilt or innocence, and not upon evidence which has no tendency in that direction, but which can only serve the purpose of distracting the minds of the jury from the real issue to gruesome exhibits which may easily lead them to a wrong conclusion.

For the errors above indicated, the judgment of the district court is reversed and the case remanded for further proceedings in harmony herewith.

REVERSED.

LETTON, J., dissenting in part.

I am unable to concur in that portion of the opinion holding it was reversible error to permit other counsel to assist the county attorney.

We held in *Rickley v. State*, 65 Neb. 841, that the county attorney has complete control of criminal prosecutions, and that he may exclude other counsel if he so desires, even if the complainant desires to employ such counsel. Of course, this is subject to the direction and control of the court. When the county attorney allows private counsel to appear with him and assist him in the trial without objection, it is clear that he desires his assistance, otherwise he could summarily dismiss him from the case, and when the fact that such counsel is employed and his assistance is desired by the county attorney is known and expressly permitted by the court, as the record shows, the defendant cannot complain.

The statutory provisions (Comp. St. 1911, ch. 7, sec. 16) are intended to limit the liability of the several counties to pay for assistance to the county attorney, and are not intended to deprive him of assistance which he believes to be necessary, and which is furnished with the consent of the court without expense to the county. It is true counsel paid by private persons are apt to err by excess of zeal, but this is entirely within the control of the official prosecutor, and he has the undoubted right to refuse to allow counsel to appear further if they go beyond the limits proper to an official prosecutor.

I think the opinion on this point is opposed to our former decisions and is against the weight of authority. See note to *State v. Bartlett*, 24 L. R. A. n. s. 564 (105 Me. 212).