ARTHUR J. ROGERS v. STATE OF NEBRASKA.

FILED OCTOBER 30, 1914.    No. 18,511.

Criminal Law: EVIDENCE: HEARSAY. Where the plaintiff in error, who was convicted upon the charge of obtaining money by false pretenses, obtained the money by means of a check given on a bank at El Paso, Texas, and the bank refused payment of the check, and sent a telegram to another bank characterizing the defendant as a fraud who had never had an account in the bank on which he had drawn his check, and requesting that the defendant should be apprehended, such telegram is not admissible in evidence. It will be regarded as a communication between third parties and as mere hearsay, made by one who speaks without the sanction of an oath and without opportunity for cross-examination.

ERROR to the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed.*

*Sterling F. Mutz* and *Harold M. Noble,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

HAMER, J.

The plaintiff in error, Arthur J. Rogers, was tried and convicted in the district court for Lancaster county. He was charged with the crime of obtaining money under false pretenses. There is evidence tending to show that he represented to the cashier of the First National Bank of Havelock, H. R. Frank, that he had money on deposit in the Union Bank & Trust Company of El Paso, Texas, subject to check and more than sufficient to pay his check for the sum of $50, being the check which he presented to the bank at Havelock, and on which that bank paid the money.

Several errors are assigned by plaintiff in error; but, as at least one of the assignments must be sustained, we will content ourselves with a consideration of that assignment. The evidence shows that after the check had been paid by the bank at Havelock, July 30, 1913, that bank sent the check to its correspondent, the Central National Bank of Lincoln, Nebraska, and that in due course of business it reached the Union Bank & Trust Company at El Paso, Texas, on or about August 7, 1913. Payment was refused. Upon the trial a telegram addressed to Central National Bank was identified by the agent of the telegraph company as having been received by its Lincoln office in due course of business, and by an officer of the bank to which it was addressed, and as having been received in the regular course of business by the bank. This telegram, over the objection of plaintiff in error that it was irrelevant, immaterial, and not the best evidence, was received in evidence. It was also objected by plaintiff in error that it was not shown that it was original, and that no sufficient foundation had been laid, and that it was hearsay. The body of the telegram offered in evidence reads: "El Paso, Texas, Aug. 7, 1913. Central National Bank, Lincoln, Neb. Items totaling seventy-five dollars signed Arthur J. Roger on us. Yours July thirtieth cleared today. Party bank fraud. Never an account here and un-

known to us and request you have apprehended and report at once American Bankers Association for action. Has been operating this game for the last six months. If we can assist you command us further.          Union Bank & Trust Co."

The matter contained in the telegram was the statement of one not under oath and not attending the trial. Its introduction offered no opportunity to cross-examine touching the matters contained in it. The statement is clearly that of a person not before the court, and not subject to cross-examination, and it was a communication by one third party to another. In *Bedford v. State,* 36 Neb. 702, there was consideration of the same sort of question. The court say: "These letters were not written to the plaintiff in error, nor in answer to letters sent by him, nor are they in any way connected with this case. Upon what theory they were admitted we are at a loss to know. Letters of third persons are receivable in evidence as merely collateral, introductory, or incidental to or in illustration of the testimony which the witness gives. 1 Chitty, Criminal Law, *368, *369; 1 Phillips, Law of Evidence (4th Am. ed.) 170. As, where a witness testified that he was induced to institute proceedings by letters of a third party. *Lewis v. Manly,* 2 Yeates (Pa.) 200. But the letters could not be received as evidence of the facts stated in them. 5 Am. Law Register, 468. 'All acts, declarations, etc., made by third persons are obnoxious to two objections: (1) That they are *res inter alios acta,* and therefore irrelevant. (2) That they are mere hearsay, the assertions of parties without the sanction of an oath and opportunity for cross-examination.'" No case has been cited where a communication of this kind between third parties has been admitted. The telegram was highly prejudicial, and it was clearly error to admit it.

The bill of exceptions shows that special counsel appeared in the case to assist the county attorney. He examined the most important witnesses for the state, among others Mr. Moye, the secretary of the bank at El Paso. He also examined Mr. C. E. Sapp. When T. R. Sapp was

Rogers v. State.

recalled he conducted his examination. He closed the argument to the jury. He was anything but mild in his manner and in his language, and was such a prosecutor as is not contemplated by the statute. Section 5599, Rev. St. 1913, provides that the county attorney may procure assistance in the trial of any person charged with the crime of felony. The statute contemplates that he shall be paid by the county board for his services. The theory of the statute is that an impartial prosecutor will be selected to assist the county attorney "under the direction of the district court." The purpose of the statute is to exclude counsel employed by private capital or procured by persons who seek their own self-interests, or who wish to gratify personal animosities. This method of selecting assistant counsel is not to be used as an engine of oppression. The employment of the prosecutor is not to be placed in the hands of wealth. The object of the statute was to put these interests out. The statute looks to the employment of an assistant who shall stand evenly balanced between the accused and the state. Special counsel seems to have been crisp in his temper and incisive in his speech. He resented the necessary interruptions of counsel, and his remarks are not free from the suggestion of personal violence.

In *McKay v. State,* 90 Neb. 63, the act in question was discussed. It is said in the opinion cited: "We are not unmindful of the fact that in many cases, particularly in sparsely settled counties, young lawyers of little experience are ofttimes, from necessity, elected to the office of county attorney, and, if the prosecution of felony cases were left to such a county attorney alone, crime might go unpunished. * * * It has not left it to outside parties to select the assistant counsel. It has imposed that duty upon the county attorney and district court, and has provided that the county attorney may, under the direction of the district court, procure such assistance. Counsel thus procured will not be actuated by sordid motives. * * * It is just as much the duty of a county attorney to see that an innocent man is not convicted as to see that the

guilty receive their just deserts. * * * Counsel called to assist in the prosecution should govern his actions in like manner."

When counsel are brought into the case to assist the county attorney, all the reasons that require fair treatment of the accused upon the part of the county attorney apply to his assistant. The judgment of the district court is reversed.

REVERSED AND REMANDED.

SEDGWICK, J., concurs in the conclusion.

ROSE, J., not sitting.