STATE OF NEBRASKA, APPELLEE, V. FLOYD WARFORD, APPELLANT.
389 N.W.2d 575

Filed July 3, 1986.   No. 85-580.

Gary L. Hogg, Buffalo County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl, for appellee.

Richard E. Shugrue, for amicus curiae Nebraska Criminal Defense Attorneys Association.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.
The defendant, Floyd Warford, was convicted of first degree sexual assault on a child, a felony under Neb. Rev. Stat. § 28-319 (Reissue 1985), and sentenced to the Nebraska Penal

and Correctional Complex for a term of not less than 2 nor more than 5 years. The acts complained of were alleged to have occurred on or about July 5, 1983, when the victim was $4\frac{1}{2}$ years old and the defendant was 43.

The case began with an anonymous telephone call on August 9, 1984, to a Child Protective Services worker for the state Department of Social Services. The worker, Jill Stump, testified that the caller expressed concern over the behavior of the victim. The caller informed Stump that the child was demonstrating sexual play with dolls, was kissing boys, and was asking them to have sexual intercourse with her. On August 31, 1984, Stump received a second call from a different person again expressing concern over similar incidents of inappropriate behavior exhibited by the child.

The child's mother was contacted and the child was brought in for an interview. At the interview the child was given four anatomically correct dolls, which the child named with the names of her mother, the defendant, her brother, and herself. The child then began playing with the dolls in a sexual manner, with the doll identified as the defendant sexually abusing the doll identified as the child, while the child's mother was at bingo. The child's mother stated that from October 1980 to July 22, 1983, she and her children were living with the defendant in a white house. She further stated that during 1983 she went out to play bingo every Wednesday and Friday night while the defendant stayed with the children.

Prior to the trial, the defendant filed a motion objecting to the competency of the victim to testify because of her age and moving that the victim not be allowed to testify. The trial court then conducted an examination of the child to determine whether she was competent to testify. The only persons present were the judge, the child, a social worker, and the court reporter. The record does not show whether counsel for the defendant or the prosecuting attorney was notified of the interview. The trial court determined that the victim was competent to testify as a witness, that she understood the nature of the proceedings, that she would be truthful in her statements and answers, and therefore was competent to testify.

At trial the child was called to the stand and began answering

questions asked by the prosecuting attorney. The child responded to some preliminary questions, and when asked whether anybody touched her in a bad way while she was living in the white house, she replied, "Yes," naming the defendant as the perpetrator. The child was then given four anatomically correct dolls to allow her to demonstrate what had occurred. The prosecuting attorney asked the child to describe what had happened, but it is clear from the record that the child became uncooperative and refused to answer any further questions. The prosecuting attorney then asked if she could show him what happened if all the people were not there, to which the child replied, "Yes." Thereupon, outside the presence of the jury, the prosecuting attorney moved to examine and cross-examine the witness in a separate room, to record the examination on videotape, and to allow the defendant and the jury to watch the examination in the courtroom on a closed-circuit television monitor. The prosecuting attorney stated that the motion was made because of the inability of the victim to testify before the jury. The State also requested that the child's therapist, Joanna Hochfelder, be allowed in the examining room for support.

Defense counsel objected on the grounds that the procedure would violate the defendant's constitutional rights by denying him the right to hear, see, and otherwise confront the witness. Defense counsel further objected because the filming would be set up and operated by the State, thereby allowing the State to bear on what was reflected. The court overruled all objections, stating that "under the circumstances, the case and the age of the victim, that it probably is appropriate under the circumstances." The court also stated that it would "accommodate the needs of the defendant as far as questioning by permitting during a recess after the direct, attorney for the defendant to confer with his client prior to cross-examination."

After the jury returned, the court and counsel for the parties joined the child and her therapist in chambers to resume direct examination of the child. The jury and the defendant viewed the proceedings on video equipment set up in the courtroom. The defendant did not have any means of communication with his attorney during this part of the proceedings, nor could the

judge monitor what was happening in the courtroom.

The prosecuting attorney attempted to have the child demonstrate with the use of the dolls what had happened between her and the defendant. The child was again uncooperative. The State then asked permission for the therapist to question the child. Defense counsel objected to the examination being conducted by someone who was not an attorney and who was an officer of the State, but the trial court allowed the therapist to conduct the examination of the victim.

After an extensive series of leading questions by the therapist with little result, the trial court ordered a recess. Following the recess, the State moved to allow the child to be interviewed in chambers by her therapist, with all other parties situated in the courtroom and watching the examination on television monitors. Defense counsel again objected to the procedure on constitutional grounds and entered a continuing objection to all leading questions. The trial court noted the continuing objection but granted the State's motion, so that the child continued her testimony in chambers with only the therapist present. All other persons involved in the trial were in the courtroom and watched the interview on television monitors. When the therapist concluded her direct examination, defense counsel was allowed in chambers to cross-examine the witness. The prosecuting attorney conducted the redirect examination. At no time did the judge have any means by which he could exercise control over the examination of the witness or interrupt the questioning to rule on objections made by the defendant.

On appeal the defendant contends that his constitutional rights under the due process clause and the confrontation clause were violated by the manner in which the child was allowed to testify. Specifically, the defendant argues that (1) the State failed to show any need for the innovative means used in questioning the child, e.g., that the defendant was disruptive or uncontrollable or would intimidate the witness, and that (2) the trial court and the defendant were not physically present in the room in which the witness was testifying, and there were no means by which the defendant could interject an objection or prevent the unlimited leading questions propounded by the therapist.

The defendant also contends that the trial court erred in failing to sustain the defendant's objection to the competency of the child as a witness. The defendant has raised an issue of first impression in this state as to whether and to what extent a trial court may constitutionally limit confrontation in order to accommodate the needs and emotional fragility of a child sexual assault victim.

This court would be remiss to close its eyes to the ever increasing problems associated with child victimization and the child's role in prosecuting the perpetrators of such crimes. These child victims are especially accessible to abusers, who oftentimes are members of the child's family or otherwise acquaintances of the child's. One survey suggests that of 583 cases of child sexual abuse only 8 percent involved a stranger to the child. See Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations*, 98 Harv. L. Rev. 806, 807 n.14 (1985). This leads to a low percentage of actual assaults that are even brought to the attention of authorities. Of those cases that are reported, even fewer lead to criminal prosecutions and the conviction rate is strikingly low. See D. Whitcomb, E. Shapiro & L. Stellwagen, When the Victim is a Child: Issues for Judges and Prosecutors 4 (Nat'l Inst. Just. 1985). Many cases involve a decision by the prosecutor not to prosecute because there is little physical evidence and the only witness is the child, who may, by the standards of our adult legal system, be perceived to be incompetent, unreliable, or otherwise not credible as a witness. See When the Victim is a Child, *supra* at 6. Even those children who appear to be competent often cannot, will not, or are not allowed to participate in the proceedings involved in a criminal trial due to the very real psychological harm that results from forcing the child to repeat the terrifying experience again and again, often in front of a large group of people, including the defendant. See, When the Victim is a Child, *supra* at 13-20; MacFarlane, *Diagnostic Evaluations and the Use of Videotapes in Child Sexual Abuse Cases*, 40 U. Miami L. Rev. 135 (1985). Children are reluctant witnesses who are especially susceptible to suggestion and easily confused by questions couched in adult language. See, Berliner, *The Child Witness: The Progress and*

*Emerging Limitations*, 40 U. Miami L. Rev. 167 (1985); Goodman, *Child Sexual Assault: Children's Memory and the Law*, 40 U. Miami L. Rev. 181 (1985). Child sexual abuse cases have awakened a need to protect the victims, not only from the actual attack but also from the emotional trauma of testifying about the experience in later legal proceedings. See Mlyniec, *See No Evil? Can Insulation of Child Sexual Abuse Victims be Accomplished Without Endangering the Defendant's Constitutional Rights?*, 40 U. Miami L. Rev. 115 (1985).

The need to adopt measures to ease the emotional burden placed on a child witness cannot, however, be an excuse for stripping the defendant of his constitutional rights. While new procedures can and must be implemented in our courts, such procedures can be valid only to the extent that they truly protect the child witness and at the same time do not infringe upon the defendant's right to confront his accusers.

Both the federal and the state Constitutions guarantee a defendant the right to confront or meet the witnesses against him face to face. U.S. Const. amend. VI and XIV; Neb. Const. art. I, § 11. Implicit in confrontation is the right to cross-examine all witnesses. *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). This right is basic to our adversary system of criminal justice and is part of due process of law that is guaranteed by the 14th amendment. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State v. Thaden*, 210 Neb. 622, 316 N.W.2d 317 (1982).

This fundamental right to confront and cross-examine witnesses is primarily a functional right which promotes reliability in criminal trials. See *Lee v. Illinois*, 476 U.S. ____, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986). The absence of proper confrontation calls into question the ultimate integrity of the factfinding process. *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980).

Recently, the Supreme Court has stated that confrontation

"(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to

cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness making his statement, thus aiding the jury in assessing his credibility." (footnote omitted). *Lee v. Illinois*, 106 S. Ct. at 2062 (citing *California v. Green*, 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970)).

The right of confrontation is not, however, immune to exception. As early as 1895, the U.S. Supreme Court held that the right of confrontation must occasionally give way to considerations of public policy and the necessities of the case. *Mattox v. United States*, 156 U.S. 237, 15 S. Ct. 337, 39 L. Ed. 409 (1895). Case law suggests that the right is subject to some hearsay exceptions. *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980), *cert. denied* 450 U.S. 1001, 101 S. Ct. 1709, 68 L. Ed. 2d 203 (1981); *United States v. Nick*, 604 F.2d 1199 (9th Cir. 1979). A defendant may waive his right of confrontation by disruptive conduct, *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970), *reh'g denied* 398 U.S. 915, 90 S. Ct. 1684, 26 L. Ed. 2d 80; by threatening or intimidating the witness, *United States v. Balano*, 618 F.2d 624 (10th Cir. 1979), *cert. denied* 449 U.S. 840, 101 S. Ct. 118, 66 L. Ed. 2d 47 (1980), and *United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976), *cert. denied* 431 U.S. 914, 97 S. Ct. 2174, 53 L. Ed. 2d 224 (1977); or by stipulating to the admission of certain evidence, *Williams v. Oklahoma*, 358 U.S. 576, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959). A defendant who pleads guilty also waives his right of confrontation. *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Although the present case does not fall squarely within any of the already established exceptions to confrontation, at the very least the cases suggest that a limitation of the right can only be necessitated by a showing of a compelling interest and any infringement must be as minimally obtrusive as possible.

The use of closed-circuit television to present the testimony of the State's primary witness against the defendant in a child sexual assault case brings all of the public policy concerns behind protecting child victims into play with the defendant's right to confront his accusers. Courts which allow such

evidentiary innovations must tailor these techniques carefully to prevent overbroad application. After reviewing the procedure by which closed-circuit television was used in the present case, we conclude that the trial court did not require the State to stay within minimal constitutional guidelines and, hence, denied the defendant his rights under the due process and confrontation clauses.

The Eighth Circuit Court of Appeals, in refusing to uphold the admission into evidence of a prerecorded video deposition during which the defendant was not present, did not foreclose any possible exception to face-to-face confrontation. *United States v. Benfield*, 593 F.2d 815 (8th Cir. 1979). What the court did find was that "what curtailment or diminishment might be constitutionally permissible depends on the factual context of each case . . . . Any exception should be narrow in scope and based on necessity or waiver." *Benfield, supra* at 821. The court indicated that there must be a showing of extraordinary circumstances necessitating reliance on any new procedure which implicates confrontation. *Benfield, supra.*

In *Hochheiser v. Superior Court (People)*, 161 Cal. App. 3d 777, 208 Cal. Rptr. 273 (1984), a California Court of Appeal refused to allow the use of closed-circuit television in the prosecution of a defendant for lewd conduct with a minor. The witnesses-victims were two boys, ages 9 and 10, and the court stated that a generalized belief in psychological harm was insufficient to show the need for altering normal trial procedures. *Hochheiser, supra.* Although the court decided the case on the basis that it had no legislative authority to allow the use of the television monitors, it also indicated that before an evidentiary innovation is employed to prevent additional injury to a child victim, the prosecution must present a factual basis supporting the nature of the potential injury to the witness, its degree, and its potential duration. *Hochheiser, supra.* "[E]xtreme care must be taken to strike the correct balance between the policies protecting the mental health of the child victim and the right of the accused to a fair trial." *Hochheiser, supra* at 793, 208 Cal. Rptr. at 283.

The record before us does not show a compelling need to protect the child witness from further injury. The record does

show that the attempt to examine the child in open court was frustrated by the child's failure to cooperate. There should also be a particularized showing on the record that the child would be further traumatized or was intimidated by testifying in the courtroom in front of the defendant. Without such a showing the use of closed-circuit television will not withstand constitutional scrutiny.

Once the State has made an adequate showing on the record, the use of a new evidentiary tool such as closed-circuit television must be as minimally intrusive as possible. See *State v. Sheppard*, 197 N.J. Super. 411, 484 A.2d 1330 (1984). At the very least, the defendant must at all times have a means of communicating with his attorney, and the court must be able to control the examination by interrupting the questioning to rule on objections. See *Sheppard, supra*.

Initially, and again during cross-examination, the defendant in this case was in the courtroom while his attorney was in chambers where the witness was testifying. The defendant could not physically confront his accuser, nor could he confront the witness through counsel because he had no means of communicating with his attorney. Even when the attorneys and the judge returned to the courtroom, the defendant did not have a meaningful opportunity to confront the witness because the court had no control over the examination process. This lack of communication between the courtroom and the room in which the witness was testifying unduly inhibited the defendant's confrontation right and was therefore constitutionally objectionable.

The camera which was used at the trial to record the examination of the witness frequently failed to show a complete view of the witness and the examiner. The camera should be so situated that persons viewing the examination in the courtroom will be able to see the witness, the examiner, and any other person (other than the cameraman) present in the room where the examination is being conducted.

Although it is proper where necessary to allow a support person, such as a parent or therapist, to be in the room with the witness while the examination is being conducted, the actual questioning of the witness must be done by persons who are

authorized to participate in the proceeding as members of the bar.

Only a person who has been admitted to the practice of law may participate in a trial by the examination of witnesses unless he appears in his own behalf. Neb. Rev. Stat. § 7-101 (Reissue 1983). The examination of a witness must be conducted within the restrictions imposed by the rules of evidence and trial procedure, and this is especially true in a criminal prosecution. A prosecutor must be an impartial officer, and private prosecutors are not permitted under our law. *McKay v. State*, 90 Neb. 63, 132 N.W. 741 (1911); *Rogers v. State*, 97 Neb. 180, 149 N.W. 318 (1914).

While it is impossible and inappropriate at this point to describe in detail the most acceptable manner of arranging the video and communication equipment for all cases, it is important that the trial court, prior to using such a technique, prescribe for the parties the mechanical requirements or conditions of the procedure, e.g., how many cameras and microphones will be used, who will operate them, where they will be placed, what part of the examining room will be shown, and where counsel will be seated. This will allow both parties the opportunity to object to the proceeding prior to its implementation. See *State v. Sheppard*, 197 N.J. Super. 411, 484 A.2d 1330 (1984). It is desirable to inform the jury of the nature of the closed-circuit telecast prior to allowing the presentation, so the jury will not afford the examination any greater weight than other testimony. See *Sheppard, supra.*

Although not specifically assigned as error, since the cause must be remanded for a new trial, it is appropriate to comment upon the procedure which should be followed in determining the competency of a child to testify in the proceeding. The defendant must be given notice and an opportunity to attend and participate by counsel in any proceeding in which the issue of the competency of the victim to testify is determined. A record of the proceeding must be made so that it will be available for review if necessary. The record in the present case is unclear as to whether the defendant waived his right to attend and participate in the pretrial proceeding, which was conducted without him or his counsel present.

For the reasons stated the judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

KRIVOSHA, C.J., participating on briefs.