James Willis **BLACK**, Appellant,

v.

Frank W. **WOODS**, Warden; and Warren Spannaus, Attorney General of the State of Minnesota, Appellees.

No. 80–1713.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1981.

Decided March 25, 1981.

---

Jeffrey R. Anderson, St. Paul, Minn., for appellant.

Thomas L. Johnson, Hennepin County Atty., Minneapolis, Minn., Edward C. Anderson, Asst. Hennepin County Atty., Minneapolis, Minn., for appellees.

Before BRIGHT, STEPHENSON and McMILLIAN, Circuit Judges.

STEPHENSON, Circuit Judge.

James Willis Black appeals the district court's [1] denial of his writ of habeas corpus filed under 28 U.S.C. § 2254. Black was convicted on three counts of first degree

---

1. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota, presiding.

murder in Minnesota state court and is serving three consecutive life sentences. In this habeas petition he claims that his right to due process was violated when the prosecution called a key witness to the stand knowing that the witness would refuse to testify. Secondly, Black claims that his right to confrontation under the Sixth Amendment was violated when this same witness' prior statements and testimony were admitted into evidence. We find little merit in the appellant's contentions and affirm the district court on both points.

## I. BACKGROUND

The resolution of the issues raised in this case requires only a brief discussion of the facts. For more thorough recitation see *State v. Black*, 291 N.W.2d 208 (Minn.1980). *See also State v. Olson*, 291 N.W.2d 203 (Minn.1980); *State v. Link*, 289 N.W.2d 102 (Minn.1979).

Black, along with Dale Olson and Jean Link, was convicted of the brutal killings of Lueberta Davis and her two infant children. Olson, pursuant to Black's instructions, tied two members of the Davis family to a bed and set fire to their apartment. The second child, LaMarr, a two-year-old, was unable to escape. All three perished in the fire. There was strong evidence, including the testimony of Jean Link, to demonstrate that Olson and Link had killed the Davis family at the behest of Black. *See State v. Black, supra*, 291 N.W.2d at 211–12.

The motive for the murders was to prevent Lueberta Davis from testifying against Black. At the time of the Davis family killings, Black was in jail on a charge of attempted aggravated robbery. Davis had information which Black believed could "put him away for twenty years." Black had earlier contacted several other inmates in an effort to find someone to silence Davis.

Jean Link, who had directed Olson to the Davis apartment and drove the getaway car, was arrested the day after the deaths. She admitted her participation in the murders. She eventually gave two written statements to police. She also testified at her own trial, where she was convicted on three counts of first degree murder. However, she refused to testify at appellant Black's trial. Instead, Link's two statements given to police and her testimony at her own trial were introduced. It is this evidence which is the subject of this appeal.

Black was convicted on three counts of first degree murder. On appeal, the Minnesota Supreme Court affirmed the jury conviction considering, among other issues, the same two points raised by Black in this habeas petition. *State v. Black, supra*, 291 N.W.2d at 212–14. In April 1980, Black filed a habeas corpus petition which was dismissed by Judge Devitt.

## II. DISCUSSION

On the first day of trial, the prosecution called Link to the stand. The defense sought an *in camera* hearing during which he moved that Link's testimony be precluded because the prosecution knew she would assert a Fifth Amendment privilege. Link's attorney listed two reasons for his client's refusal to testify. First, he claimed a Fifth Amendment privilege and, secondly, he said Link feared reprisal by Black against her or her child.

Out of the presence of the jury, Link stated that she would refuse to testify. She had earlier refused to testify at the Olson trial. The state trial judge found that Link had no valid Fifth Amendment privilege because she had already been convicted of the crime which was to be the subject of her testimony. *See Reina v. United States*, 364 U.S. 507, 513, 81 S.Ct. 260, 264, 5 L.Ed.2d 249 (1960). When the jury was recalled, the prosecution again sent Link to the stand. The court instructed the prosecution to ask Link a question to see if she would refuse to answer. Link declined to testify, the court ordered her to answer and again she refused. The state judge found her in contempt and excused her from the case.

Black claims that his right to due process was denied when the prosecution called Link to the stand knowing she would refuse

to testify. Black asserts that this tactic invited the jury to speculate about Link's testimony and that such negative inferences were presented in a way that was not subject to cross-examination. He relies on *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963). *See United States v. Brickey,* 426 F.2d 680 (8th Cir.), *cert. denied,* 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970).

The *Brickey* court summarized the principle espoused in *Namet* as follows:

> The court found that a witness' assertion of his Fifth Amendment privilege had been held to be reversible error in two instances: (1) "when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege" and (2) where "a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination." * * * The Court went on to note that reversible error has generally not been found when the episodes were no more than minor lapses through a long trial * * *.

*United States v. Brickey, supra,* 426 F.2d at 688 (citations omitted). Black maintains that the prosecution acted in bad faith. He asserts that the government knew that Link would not testify because she had refused to testify at the Olson trial and repeated her refusal just prior to taking the stand in this case.

■ We hold that neither of the two instances listed in *Brickey* are present in this case. We agree with the prosecution that, although Link had indicated she would refuse to testify, neither the government nor the court could be sure that she would do so until she was directed to testify by the court. The trial court had advised Link that she had no right to rely on a Fifth Amendment privilege. Further, Link had stated under oath at her own trial that she would testify in this case. The jury did not need to speculate about Link's testimony because her earlier statements were introduced into evidence. This episode occurred

on the first day of a trial that lasted nearly two weeks. In light of the substance of Link's earlier statements which were introduced, it is clear that Link's refusal to testify did not add "critical weight" to the prosecution's case. All these factors support our conclusion. We, therefore, concur with the result and reasoning adopted by the Minnesota Supreme Court. *State v. Black, supra,* 291 N.W.2d at 212–13. *See United States v. Quinn,* 543 F.2d 640, 649–51 (8th Cir. 1976).

The second issue raised by Black is that the introduction of Link's earlier statements and testimony violated his Sixth Amendment right to confrontation. The trial court admitted two unsworn statements which had been given to police and Link's testimony at her own trial. The judge found that Link was an unavailable witness and that her earlier statements, although hearsay, were acceptable as admissions against penal interest. *State v. Black, supra,* 291 N.W.2d at 213.

The state argues that Link's prior statements and testimony bear sufficient indicia of reliability to satisfy the requirements of the confrontation clause[2] and that Black waived or forfeited his right to confront Link by inducing her fear that if she testified she or her child would be harmed.

■ We agree with the state court that Black forfeited his confrontation right by a pattern of conduct that resulted in Link's fear which we find to be reasonable under the circumstances. *See United States v. Carlson,* 547 F.2d 1346 (8th Cir. 1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). The record is replete with Black's threats and attempts to intimidate against Link and others. *See State v. Black, supra,* 291 N.W.2d at 214. Black had physically abused Link and threatened to kill her if she did not do what she was told. The *Carlson* court correctly stated that "[t]he Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery."

---

2. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

*United States v. Carlson, supra,* 547 F.2d at 1359.

■ Appellant Black argues that the state trial court made insufficient findings of fact to justify the waiver. Specifically, he asserts that there was no evidence of an expressed threat addressed to Link by Black or anyone acting on his behalf. We believe that this position ignores the facts of this case and the demonstrated tendencies of Black. As the Minnesota Supreme Court correctly observed:

> [Black's] motive for killing the Davis family, that he was afraid Davis would testify against him on the robbery charges, provided Link with the most graphic and explicit threat possible if she testified against him. Her own participation in Davis' murder, which took place while defendant was in jail, made Link realize that if she testified against him at his trial, her life would be in danger. Link stated at her own trial, "I mean, if he'd kill her [Lueberta] just because she was going to testify against him for a robbery, what was he going to do to me if I knew about him murdering somebody?"

*State v. Black, supra,* 291 N.W.2d at 214.

We emphasize that our conclusion is based upon Black's waiver of his right to confrontation and, therefore, we do not reach the issue of whether there was any violation of the confrontation clause.

We conclude that the district court's denial of Black's writ was proper.

Affirmed.