197 N.J. Super. 411 (1984)
484 A.2d 1330
STATE OF NEW JERSEY, PLAINTIFF,
v.
GEORGE R. SHEPPARD, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal), Burlington County.
Decided August 29, 1984.
*414 Lily Oeffler for plaintiff (Stephen G. Raymond, Burlington County Prosecuting Attorney).
Robert Sloan for defendant (James Logan, Jr., attorney).
HAINES, A.J.S.C.
Defendant, George R. Sheppard, has been indicted for sexual assault, engaging in sexual conduct which would impair or debauch the morals of a child and child abuse. The State now moves for permission to present the testimony of the ten-year-old victim, defendant's stepdaughter, through the use of video *415 equipment. Defendant objects, claiming his right of confrontation, guaranteed by the Sixth Amendment of the United States Constitution and Art. 1, par. 10 of the New Jersey Constitution (1947), will be violated by the procedure. The question has not been addressed in the published opinion of any court in this State.[1]
The State proposes to place the child, the prosecuting attorney, defense counsel, and a cameraman in a room near the courtroom at the time of trial. The room will be equipped with video and audio systems. The judge, jury, and defendant will be in the courtroom. The child will testify as though sitting in the courtroom, responding to questions from the prosecutor and the defense attorney. Defendant, the judge, the jury, and the public will see and hear her testimony through monitors placed appropriately in the courtroom. Private communication between defendant and his attorney will be available through an audio connection.
A hearing was held, in response to the State's application, at which witnesses for the State testified and were cross-examined. Defendant, who was present, represented by counsel and provided with notice and an opportunity to be heard, did not introduce any evidence.
Robert L. Sadoff, a forensic psychiatrist with substantial credentials relating to trial proceedings as well as medical matters, was the first witness. He interviewed the child victim for the purpose of testifying at the hearing. She revealed frequent incidents of sexual abuse by her stepfather beginning when she was only three or four-years old. She told him she would be able to testify in open court facing the defendant. Her willingness, however, was based upon a misconception. She was afraid of her stepfather, who had threatened to kill her *416 if she revealed his activities, and therefore wanted to send him to jail for her protection. She believed that he could not be sentenced to jail if she testified through the use of videotape equipment. When advised otherwise, she expressed a preference for a video arrangement.
Doctor Sadoff said the victim had the capacity to testify truthfully. It was his opinion, however, that avoidance of an in-court appearance through the use of video equipment would improve the accuracy of her testimony. He provided reasons: An adult witness, testifying in court, surrounded by the usual court atmosphere, aware of a black-robed judge, a jury, attorneys, members of the public, uniformed attendants, a flag, and religious overtones, is more likely to testify truthfully. The opposite is true of a child, particularly when the setting involves a relative accused by her of sexual abuse. She becomes fearful, guilty, anxious, and traumatized. In most cases, she will have been exposed to both pleasant and abusive associations with the accused. As a consequence, she has ambivalent feelings. Anger against the relative is opposed by feelings of care, not only for him but also for other family members who may be harmed by a conviction. There is guilt as well as satisfaction in the prospect of sending the abuser to prison. These mixed feelings, accompanied by the fear, guilt, and anxiety, mitigate the truth, producing inaccurate testimony. The video arrangement, because it avoids courtroom stress, relieves these feelings, thereby improving the accuracy of the testimony.
In his opinion, the child was well-oriented, with a sound memory and no evidence of psychotic-thought disorder, hallucinations or delusions. She currently receives group and individual counseling. Probable long-range emotional consequences resulting from her in-court testimony would be the continued presence of fear, guilt, and anxiety. The testimonial experience is itself traumatic and likely to be long remembered. Possible long-term effects of her testimony in court would be nightmares, depression, eating, sleeping, and school problems, behavioral *417 difficulties, including "acting out," and sexual promiscuity. The psychiatric goal in these cases is to provide appropriate treatment of the offender and strong support for the child to the end that the family can be reunited. The prospect of reaching this goal will be much inhibited by face-to-face testimony.
Two attorneys with substantial experience in the prosecution of child abuse cases testified to the difficulties attending the presentation of children's testimony. In most cases, prosecutions are abandoned or result in generous plea agreements, either because the child's emotional condition prevents her from testifying or makes the testimony obviously inaccurate or inadequate. One attorney, who had handled 30 to 40 of these cases for the State, was able to complete a trial in only one. In most, while the child victim was able to provide her with information sufficient to support a prosecution and was sometimes able to appear with difficulty before a grand jury, she could not testify in court face-to-face with the accused and other relatives. The victim either refused to testify, or "froze" when she got to court. Children who did testify, e.g., before a grand jury, frequently "forgot" details, changed stories, or presented inconsistent facts. Ultimately, many broke down, cried, ignored questions and eventually refused to answer. Most of the victims involved in these cases were being treated by counsellors who frequently advanced the opinion that their child patients could not survive the trauma attending a courtroom appearance.
The second attorney, a member of a "charge" committee in the prosecutor's office, had reviewed 75 to 80 cases of child abuse. His committee was responsible for double-checking cases which the prosecutor believed would have to be dismissed for various reasons. Nearly 90% of the child abuse cases were dismissed as a result of problems attending the testimony of children, who could not deal with the prospect of facing fathers, stepfathers, relatives, and strangers in a courtroom setting. *418 He described three child abuse cases which illustrated the problems.
(1) A child was the victim of a stranger's sexual molestation at age 12. The facts did not become known to the prosecutor (often the case) until she was 17. The case was dismissed on the basis of psychiatric advice that the child could not testify without having a total emotional breakdown. The child's approach to emotional survival, typically, had been to forget, forget, forget. Reinforcing her memory of this traumatic event would have been devasting.
(2) A seven-year-old boy was abused by a friend. He was precocious and articulate when speaking to the prosecuting attorney. When presented to the grand jury, the presence of many people made him hesitant, forgetful, and inconsistent. Shortly afterward, for unknown reasons, he and his family moved to Italy and the matter was resolved by a plea agreement.
(3) A father was charged with sexually abusing his daughter. The child found it very difficult to articulate the facts, and refused to discuss them with anyone except the prosecuting attorney. The complaint was therefore dismissed; the necessary facts could not be presented to a grand jury.
The final witness was a video expert. He testified that the video equipment to be used at the trial of this matter would provide instant transmission of images and voices from a remote room to the courtroom, providing more than acceptable clarity. Both video and audio would be taped to preserve the record of the child's testimony. Images could be presented in black and white or color. In the present case, color will be used. Special lighting is not necessary. Although bright lights improve color presentation, they will not be required in this case. Monitors (picture screens with sound capacities) will be connected to the camera and placed in the courtroom. A zoom lens will be available for close-ups of the witness. The witness and both attorneys can be photographed simultaneously without difficulty.
An in-court demonstration was provided by the expert using the video equipment to be employed at trial in a conference room adjoining the courtroom. Two attorneys acted as witness and prosecutor. A monitor with a 25" screen faced the judge. The use of the zoom lens was illustrated. A well-defined picture appeared on the monitor; when the zoom lens was used, facial details were provided with great clarity. The testimony was distinct and easily understood. The color was satisfactory *419 although no special lighting was used. The video expert testified that audio communication between the defendant and his attorney would be provided through wireless devices or a hard wire connection. Two-way communication from the judge to the conference room could also be provided.
It is the court's conclusion that the planned video arrangement for presenting the testimony of the child victim satisfies constitutional requirements. It will be allowed. That conclusion is supported by the following extended analysis.

A. The Dimensions of the Problem; Trial Effects; Social Responsibility.
According to an extensive article appearing in Newsweek (May 14, 1984), "somewhere between 100,000 and 500,000 American children will be [sexually] molested this year." The same article refers to a study "showing that 19% of all American women and 9% of all men were sexually victimized as children." According to the State's witnesses in this matter, the Burlington County Prosecutor's Office interviews seven to eight children a month in connection with sexual-abuse cases. The Newsweek article discusses the difficulties involved when these cases reach court, pointing to many of the problems mentioned by the State's witnesses. Children and relatives are ashamed and afraid. There is anxiety about the future of the child and the family. In many cases the abuser contributes all or most of their financial support. Counselors who believe that rehabilitation and the consequent preservation of family unity and security are possible, advise against prosecution.
For obvious reasons, only one witness with personal knowledge is available to prove the State's case in almost every child abuse prosecution: the child victim. These victims, as shown by the State's proofs, have been traumatized by their subjection to the abuse. They become so further traumatized by the prospect of testifying in front of their abusers that they cannot speak about the central happenings or can do so only with great *420 difficulty and doubtful accuracy. The in-court experience may cause further lasting emotional harm. Writers in the field bear this out. Libai, "The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System," 15 Wayne L.Rev. 977 (1969), has this to say:
Psychiatrists have identified components of the legal proceedings that are capable of putting a child victim under prolonged mental stress and endangering his emotional equilibrium: repeated interrogations and cross-examination, facing the accused again, the official atmosphere in court, the acquittal of the accused for want of corroborating evidence to the child's trustworthy testimony, and the conviction of a molester who is the child's parent or relative. [at 984]
....
The fact is that psychiatrists all over the world repeatedly warn that `legal proceedings are not geared to protect the victim's emotions and may be exceptionally traumatic.' The studies do not as yet demonstrate a clear causal link between the legal proceedings and the child victim's mental disturbances, but no psychiatric study has attempted to prove, or is likely to attempt to prove in the future, such a causal link. Psychiatrists agree that they cannot isolate the effects of the `crime trauma' from the `prior personality damage' or either of the foregoing from the `environment reaction trauma' or the `legal process trauma.' But psychiatrists do agree that when some victims encounter the law enforcement system, for one reason or another, the child requires special care and treatment. [at 1015]
Libai points to a study comparing a "court sample" of child victims involved in criminal proceedings with a random sample of such victims, which "found that 73% of the court sample had behavior problems and over-disturbances compared with only 57% of the random sample." At 982.
Another article entitled, "Proving Parent-Child Incest," 15 U. of Mich. Journal of Law Reform 131 (Fall 1981), by Ordway, addresses the need to find a better way to present children's testimony in sexual abuse cases because of the human and social costs involved:
Our system of justice manifests a concern with human costs at many levels. The eighth amendment prohibits cruel and unusual punishment, and prisons, despite their problems, attempt to provide for more than mere physical survival. Bankruptcy procedures protect enough of the assets to cover necessaries. Tort law struggles to develop a fair system for compensating victims' loss of *421 companionship and mental distress. Most pertinent here are the informal procedures and the `best interest' standards of the juvenile/family courts.
Furthermore, it is as sensible to establish an exception to protect the incest victim from trauma as it is to protect the taxpayer from expenditure and the accused from delay. The only difference between the first and the latter two harms is the value at risk. In light of the fact that money and time have recognizable value only in relation to human needs and values, the cost in harm to a person must be valued at least as highly as money and time. [at 148, n. 78]
New Jersey is sensitive to the needs of juveniles and to their problems. Its system of juvenile courts, culminating in the recent creation of the Family Division of the Superior Court, has always been devoted to the "best interest" of the juvenile. Judicial responsibility in juvenile matters is described in Sorentino v. Family & Children's Soc. of Elizabeth, 72 N.J. 127 (1976), a custody case. The Supreme Court said:
The court cannot evade its responsibility, as parens patriae of all minor children, to preserve them from harm. The possibility of serious psychological harm to the child in this case transcends all other issues. [at 132; citations omitted]
Unfortunately, this all-encompassing concern for the welfare of children has not been directed toward their protection in our courts when they are obliged to testify as victims of abuse.
Testimonial problems are being addressed in other states in various ways. In California, for example, preliminary hearings may be videotaped and the taped testimony presented at a later trial. Cal.Penal Code § 1346 (West 1984). The arrangement, however, does not resolve the problems of fear, anxiety, and trauma affecting the child witness. She is still subjected to a face-to-face confrontation at the preliminary hearing.
Some states permit hearsay testimony, e.g., by a counsellor, to avoid the presentation of a child witness. Videotaping arrangements are authorized in some jurisdictions. Libai, op. cit., supra, recommends the use of a two-way glass enclosure in the courtroom which would permit a child witness to be observed by everyone in the courtroom while she remained unconscious of their presence. Statutory provisions in addition to California which illustrates the varied approaches are as follows:

*422 (1) Arizona

Permits videotaped testimony of a minor witness in the presence of the court, the defendant, defendant's counsel, the prosecuting attorney or plaintiff and plaintiff's counsel for presentation to the jury at a later time as evidence. Ariz. Rev. Stat. Ann. § 12-2312 (1982)
(2) Florida

Upon application to the court on notice to the defendant and proof of a substantial likelihood that a child abuse victim will suffer severe emotional or mental strain if required to testify in open court, her out-of-court testimony may be videotaped for use as evidence. A trial judge must preside at the videotape session and shall rule on all questions as if at trial. (No mention is made of confrontation.) Fla. Stat. Ann. § 918.17 (West 1984)
(3) Montana

Videotaped testimony of a child victim is permissible as evidence even though the victim is not in the courtroom when the videotape is admitted into evidence. The judge, prosecuting attorney, victim, defendant, defendant's attorney, and such other persons as the court deems necessary shall be allowed to attend the videotaped proceedings. Mont. Code Ann. § 46-15-401 (1983)
(4) New Hampshire

In cases where the victim is under 16 years of age, the victim's testimony shall be heard in-camera unless good cause is shown by the defendant. The record of the victim's testimony is not to be sealed and all other testimony and evidence produced during the proceeding shall be public. N.H. Rev. Stat. Ann. § 632-A:8 (1983).
(5) New Mexico

Upon a showing that a child victim may be unable to testify without suffering unreasonable and unnecessary emotional or mental harm, out-of-court videotaping of her testimony is permitted. (No mention of confrontation.) N.M. Stat. Ann. § 30-9-17 (1982).
(6) Colorado

An out-of-court statement made by a child describing any act of sexual contact performed with that child which is otherwise inadmissible as evidence, is admissible in criminal proceedings in which the child is the victim of an unlawful sexual offense. The court must find that the statement is reliable and the child must either testify at the proceeding or be unavailable. Colo. Rev. Stat. § 13-25-129 (1983).
(7) Washington

Same as Colorado's statute except that, when the child is unavailable, there must be other corroborative evidence of the act.
(8) Texas

The "visual and aural" recording of the pretrial statement of a child is admissible at trial if no attorney for either party is present when the statement was made and the child is available to testify. Other conditions are listed. If the statement is admitted into evidence, either party may call the child to testify and the opposing party may cross-examine. Statute also permits testimony of a child by closed-circuit television from a room outside the courtroom. "The *423 court shall permit the defendant to observe and hear the testimony of the child in person but shall ensure that the child cannot hear or see the defendant." In addition, statute permits a like arrangement for recording the child's testimony before trial and its later showing in court. Tex.Crim.Proc.Code Ann. § 38.071 (Vernon 1983).
Texas appears to be the only state with a complete statutory solution to the confrontation problem. Colorado and Washington offer partial solutions since the admission of a "statement" is obviously much less satisfactory than the presentation of all of a child's testimony by videotape.

B. The Right of Confrontation: Physical Presence.
The defendant claims that the proposed video presentation of testimony violates his constitutional right of confrontation. It is his reading of our constitutions that they entitle him to confront every witness against him in person in court. The Sixth Amendment to the Constitution of the United States provides in part: "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." Art. 1, par. 10, of the New Jersey Constitution (1947) provides: "in all criminal prosecutions the accused shall have the right ... to be confronted with the witnesses against him...." The confrontation clause is held to be a fundamental right to which the states are subject by reason of the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403-405, 85 S.Ct. 1065, 1067-1069, 13 L.Ed.2d 923 (1965); State v. Williams, 182 N.J. Super. 427, 434 (App.Div. 1982).
U.S. v. Benfield, 593 F.2d 815 (8 Cir.1979), provides some support for the defendant's position. In that case, after a videotaped deposition of the victim was admitted into evidence, the defendant was convicted of misprison of felony for failing to report an abduction by others. The victim testified by deposition because she feared psychological harm, if forced to confront the defendant in court. During the deposition the defendant could observe the victim through a one-way glass. He could reach his attorney, who was present while the witness was deposed, through an audio device. He appealed his conviction, *424 arguing that his confrontation was only partial and did not satisfy the Sixth Amendment. The appellate court agreed, stating:
Normally the right of confrontation includes a face-to-face meeting at trial at which time cross-examination takes place.... While some recent cases use other language, none denies that confrontation required a face-to-face meeting in 1791 and none lessens the force of the sixth amendment. Of course, confrontation requires cross-examination in addition to a face-to-face meeting. The right of cross-examination reinforces the importance of physical confrontation. Most believe that in some undefined but real way recollection, veracity and communication are influenced by face-to-face challenge. This feature is a part of the sixth amendment right additional to the right of cold, logical cross-examination by one's counsel. While a deposition necessarily eliminates a face-to-face meeting between witness and jury, we find no justification for further abridgment of the defendant's rights. A videotaped deposition supplies an environment substantially comparable to a trial, but where the defendant was not permitted to be an active participant in the video deposition, this procedural substitute is constitutionally infirm. [at 821]
Benfield, however, is distinguishable. It concerned a deposition. The jury was not present to see and hear the actual testimony. The victim was an adult, not a child, as here. The charge did not involve sexual abuse. Furthermore, Benfield recognized the possibility of exceptions to the right of confrontation, saying: "what curtailment or diminishment might be constitutionally permissible depends on the factual context of each case, including the defendant's conduct ... Any exception should be narrow in scope and based on necessity or waiver." Ibid. Indeed, the court acknowledged:
It is possible that face-to-face confrontation through two-way closed circuit television might be adequate. By a four to three vote, the Missouri Supreme Court has approved the use of such testimony by an expert witness in a case involving violation of a municipal ordinance, despite a defense based on the sixth amendment. Kansas City v. McCoy, 525 S.W.2d 336 (Mo. 1975). Among the more disturbing aspects of the decision is that there was no showing of extraordinary circumstances necessitating reliance on the procedure. [Id. at 822]
Defendant may obtain some comfort from Herbert v. Superior Court of the State of California, 172 Cal. Rptr. 850, 117 Cal. App.3d 661 (Dist.Ct.App. 1981). Defendant in that case was charged with sexual offenses involving a five-year-old girl. At a preliminary examination, she was reluctant or unable to *425 testify and was therefore so positioned in the courtroom that she and the defendant could not see each other. The defendant could hear her testimony. She could be seen by the judge and the attorneys. The court held that the arrangement violated the defendant's right of confrontation, citing Benfield. It said:
The historical concept of the right of confrontation has included the right to see one's accused face-to-face, thereby giving the fact finder the opportunity of weighing the demeanor of the accused when forced to make his or her accusation before the one person who knows if the witness is truthful. [172 Cal. Rptr. at 855, 117 Cal. App.3d at 671]
Herbert is closer to the point than Benfield. Nevertheless, it is also distinguishable. Here, the defendant will be able to see the witness; there he could not. The Herbert court recognized the fact that "[t]he confrontation right is not absolute," 172 Cal. Rptr. at 853, 117 Cal. App.3d at 667, but found no room for an exception on the facts of that case. Its final conclusion was motivated in part by the fact that there was no record showing that the child's conduct required the arrangement, no record of any intimidating action by defendant, no oath taken by the victim and no request from defendant or the prosecutor to make a special arrangement. 172 Cal. Rptr. at 855, 117 Cal. App.3d at 670. Here we have a record of the child's concerns, supported by the opinion of a psychiatrist who believed that emotional damage could be caused by in-court testimony. There has been a request by the prosecutor for the video arrangement. The witness will be sworn before she testifies. Herbert considered neither a video technique nor the special problems of child witnesses.
Additionally, doubt may be cast upon the Herbert conclusion by Parisi v. Superior Court of the State of California for the County of Los Angeles, 192 Cal. Rptr. 486, 144 Cal. App.3d 211 (Dist.Ct.App. 1983). Defendant in that case was charged with sexual abuse of his eight-year-old daughter. The child appeared as a witness at the preliminary examination but became embarrassed and could not answer questions out loud. She was therefore permitted to whisper her answers to the magistrate conducting the hearing who repeated them on the record. *426 Defendant argued that his rights of confrontation and cross-examination were impermissibly infringed by this procedure. The court, disagreeing, said:
It is the responsibility of every court to conduct its proceedings in such a manner that the truth will be established and it is its duty to render assistance whenever such aid is needed.
In the case at bar, because of her fear and discomfort, a young victim of sexual crimes committed by her father was too embarrassed to articulate aloud answers to two most intimate questions. Under such circumstances, it was not improper for the magistrate to intervene in order to help elicit her testimony. In essence, the court did but act as a "loud speaker" for a child temporarily rendered mute. [at 192 Cal. Rptr. 490; citations omitted]
The Court distinguished Herbert noting that the Parisi defendant was able to see the witness.
As Benfield, Herbert, and Parisi all acknowledged, the right of confrontation is not absolute. Benfield and Herbert do not control the issue in the present case. Other cases and other reasons compel the conclusion here that the proposed video presentation will not offend any constitutional demands.
As early as 1895, the United States Supreme Court held that the right of confrontation "must occasionally give way to considerations of public policy and the necessities of the case." Mattox v. U.S., 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895). In Mattox, witnesses died and were consequently unavailable[2] at the time of trial. Their prior testimony was admitted into evidence. The Supreme Court held this to be permissible, saying:
A technical adherence to the letter of a constitutional provision may occasionally be carried further than is necessary to the just protection of the accused, and further than the safety of the public will warrant. [156 U.S. at 243, 15 S.Ct. at 340]
In 1980, in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Court said:
[T]he Confrontation Clause reflects a preference for face-to-face confrontation at trial and that "a primary interest secured by [the provision] is the right *427 to cross-examination." Douglas v. Alabama, 380 U.S. 415, 418 [85 S.Ct. 1074, 1076, 13 L.Ed.2d 934] (1965)
The Court, however, has recognized that competing interests, if closely examined, may warrant dispensing with confrontation at trial. [448 U.S. at 63-64, 100 S.Ct. at 2537-2538]
In California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), Harlan, J. concurring, said: The belief that the rights of confrontation and cross-examination are co-extensive is "an understandable misconception." Id. at 172-173, 90 S.Ct. at 1942-1943.
Earlier, in Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the Court held:
Our cases construing the clause hold that a primary interest secured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation. [380 U.S. at 418, 85 S.Ct. at 1076]
In United States v. Tortora, 464 F.2d 1202 (2 Cir.1972), cert. den. 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972), the voluntary failure of a defendant to appear in court was held to waive his right of confrontation. In United States v. Toliver, 541 F.2d 958 (2 Cir.1976), an asthmatic defendant was absent during several days of trial while prosecution witnesses testified. The court nevertheless held that such testimony, while violating the confrontation clause, was not sufficiently probative of the defendant's guilt to constitute reversible error. In Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Court permitted introduction of an out-of-court statement, holding that there was no violation of the confrontation clause because the testimony had other "indicia of reliability," was of "peripheral significance" and was not "crucial" to the prosecution or "devasting" to the defendant. Id. at 87, 91 S.Ct. at 219.
5 Wigmore, Evidence (Chadbourne Rev. 1974) § 1365, discusses the distinction between confrontation and cross-examination:
Now confrontation is, in its main aspect, merely another term for the test of cross-examination. It is the preliminary step to securing the opportunity of cross-examination; and, so far as it is essential, this is only because cross-examination is essential. The right of confrontation is the right to the opportunity of *428 cross-examination. Confrontation also involves a subordinate and incidental advantage, namely, the observation by the tribunal of the witness' demeanor on the stand, as a minor means of judging the value of his testimony. But this minor advantage is not regarded as essential, i.e., it may be dispensed with when it is not feasible. Cross-examination, however, the essential object of confrontation, remains indispensable. [at 28]
Wigmore then explains the meaning of confrontation:
There is, however, a secondary advantage to be obtained by the personal appearance of the witness; the judge and the jury are enabled to obtain the elusive and incommunicable evidence of a witness' deportment while testifying, and a certain subjective moral effect is produced upon the witness.
....
This secondary advantage, however, does not arise from the confrontation of the opponent and the witness; it is not the consequence of those two being brought face to face. It is the witness' presence before the tribunal that secures this secondary advantage  which might equally be obtained whether the opponent was or was not allowed to cross-examine. In other words, this secondary advantage is a result accidentally associated with the process of confrontation, whose original and fundamental object is the opponent's cross-examination. [§ 1395 at 153-154]
This opinion is underlined in the following note:
The following are instances of amusing legal pedantry: Bennett v. State, 62 Ark. 516, 36 S.W. 947 (1896) (holding erroneous the action of the trial court in proceeding with the examination of witnesses during the accused's absence in the water closet); State v. Mannion, 19 Utah 505, 57 Pac. 542 (1899) (a witness for the state claiming to be afraid of the defendant, the court placed him back in the room, out of sight and hearing of the witness; held improper, on the absurd ground that the dictionaries define "confront" as meaning `to bring face to face'.... [§ 1399 at 199]
The numerous exceptions to our hearsay rules, Evid.R. 63(1), et seq., present daily instances of testimonial admissions without any confrontation with the witness. In Ohio v. Roberts, supra, the court said that to give the confrontation clause an unqualified scope "would abrogate virtually every hearsay exception...." 448 U.S. at 63, 100 S.Ct. at 2537.
Numerous cases reflect the use of electronic devices for the presentation of evidence and implicate the confrontation clause. Benfield has been cited above. In our own State, a defendant in a custody case excluded from a judge's private interview with a child, was permitted to hear the interview in the courtroom *429 through an audio arrangement. The judge solicited questions from counsel in the courtroom and repeated them to the child in his chambers. The technique was approved on appeal. N.J. Youth and Family Services v. S.S., 185 N.J. Super. 3 (1982). The court held that the confrontation clause had not been violated. It said:
We are satisfied that under the circumstances the procedure utilized was in the best interests of the child. It is evident from the record that the child was emotionally disturbed. The trial judge described him as `rigid.' We conclude that the judge reasonably found that a certain degree of privacy would be more likely to elicit a genuine and reliable response from the child. We are satisfied that the trial judge acted reasonably in balancing the needs of the child for protection as against defendant's need to see her child when that child answered the judge's questions or answered questions submitted by the attorneys for cross-examination....
The use of the tape recorder and voice transmission under these circumstances is an acceptable method of balancing the interests of the child and the rights of the parties while at the same time affording the trier of fact maximum opportunity to ascertain the truth by questioning the child and observing his demeanor. [at 7]
N.J. Youth and Family Services cited Kansas City v. McCoy, 525 S.W.2d 336 (Mo.Sup.Ct. 1975), with approval. In that case an expert witness testified against defendant via closed circuit television. On appeal defendant argued that his right of confrontation had been violated. The court, quoting Douglas v. Alabama, supra, said that "an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation." Id. at 338. It held that the television arrangement provided the cross-examination opportunity required by the Douglas court; television did not significantly affect the ability to question and observe the witness. Id. at 339. Jury impact was found to be little different, whether the witness appeared in court, in person or by television. Ibid.
The conclusion is supported by People v. Moran, 114 Cal. Rptr. 413, 420, 39 Cal. App.3d 398, 410 (Dist.Ct.App. 1974). In Moran, defendant argued that the jury could not weigh the credibility of a witness whose testimony at a preliminary hearing was presented at trial by videotape. The court held, however, *430 that the jury could adequately weigh credibility and that "the process does not significantly affect the flow of information to the jury." It satisfied the "broad purposes" of the confrontation clause. 114 Cal. Rptr. at 420, 39 Cal. App.3d at 410-411.
Moran also considered the use of videotape as a reliable medium for the presentation of evidence. It said:
We turn next to defendant's due process contentions concerning the technical distortions of the medium and its failure to accurately transmit the demeanor of the witness and the dramatic components of the testimony. In general, the advantages and disadvantages of the "filtering" effect of the medium fall equally on both sides. Therefore, its use is "fair" and there is no inherent unfairness. Conceding that testimony through a television set differs from live testimony, the process does not significantly affect the flow of information to the jury. Videotape is sufficiently similar to live testimony to permit the jury to properly perform its function. Fair new procedures that facilitate proper factfinding are allowable, although not traditional. In any event, we do not comprehend defendant's contention that the tape is less valid or less reliable than the reading of the written transcript of the preliminary hearing....
the videotape is a modern technique that better protects the rights of all concerned. We can also take judicial notice of the fact of the ubiquity of television sets, as revealed by the 1970 census [96% of all households had at least one black and white television set], and recent availability of low-cost television cameras. With such a widespread availability of television comes a familiarity with its technical characteristics and distortions. Indeed the television camera is a stranger only in the slower moving apparatus of justice. [at 114 Cal. Rptr. 420; citations omitted]
The federal courts have approved the use of a videotaped confession as evidence. In Hendricks v. Swenson, 456 F.2d 503 (8 Cir.1972), cited in Moran, the court said:
If a proper foundation is laid for the admission of a videotape by showing that it truly and correctly depicted the events and persons shown and that it accurately reproduced the defendants' confession, we feel that it is an advancement in the field of criminal procedure and a protection of defendants' rights. We suggest that to the extent possible, all statements of defendants should be so preserved.
In discussing videotapes as evidence, Moran held that the California Evidence Code § 250 included them in its definition of "writing," saying that its Legislature "recognized the widespread use of videotape in our society and its relevance to legal proceedings." 114 Cal. Rptr. 418, 39 Cal. App.3d at 409. *431 The rules in New Jersey can be read no differently. Evid.R. 1(13) is nearly identical to the California rule. It provides:
"Writing" means handwriting, typewriting, printing, photostating, photography, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, combinations thereof, provided that such recording is (a) reasonably permanent and (b) readable by sight.
Videotape records obviously fall within the language of the definition; they provide a means for recording words and pictures. Motion pictures have long been admissible in evidence in our courts. Balian v. General Motors, 121 N.J. Super. 118, 125 (App.Div. 1972). There is little difference between a motion picture presentation or a videotaped presentation except that the latter can provide the simultaneous photographing and transmission of information while the former cannot.
Our rules recognize the adequacy of videotaped evidence. R. 4:14-9, adopted in 1980, permits the taking and use of videotaped depositions in civil proceedings. R. 3:13-2 permits the taking and use of the deposition of a material witness who "may be unable to attend ... as provided in civil actions...." Thus, the videotaped deposition of a material witness may be introduced in evidence in our criminal courts. In addition to this formal authorization, it is apparent to this court from the demonstration of the equipment to be used in this matter and the expert testimony that the use of a videotaped presentation has the capacity to present clear, accurate, and evidentially appropriate transmissions of images and sounds to defendant, the judge, the jury, and the public.
Great harm befalls the victims of child abuse. It destroys lives and damages our society. Known abusers are not being prosecuted because evidence against them cannot be presented. Children who are prevailed upon to testify may be more damaged by their traumatic role in the court proceedings than they were by their abuse. These considerations must be weighed and balanced against the right of confrontation in child abuse cases.
*432 Any zeal for the prosecution of these cases, however, cannot be permitted to override the constitutional rights of the defendants involved. They are at great disadvantage in these cases. The testimony of a small child can be very winsome. (More winsome, perhaps, if she testifies in person than by videotape.) The difficulty of cross-examining a young child may prevent the exposure of inaccuracies. The charge of child abuse carries its own significant stigma. Defendants in these cases may find themselves ostracized, whether they are guilty or not. Like children, they too have ambivalent feelings and may decide, even though they believe they will be acquitted, that it is better for the child, the family and themselves to accept a plea agreement than to subject everyone involved to a trial. These problems must also be weighed in deciding the dimensions of the constitutional right of confrontation.
The Confrontation Clause is not implacable in its demands. Nearly every authority agrees that it is subject to exceptions. In reaching the conclusion, as this court has, that the use of videotaped testimony in this case of child abuse is permissible, it is accepted as a fact that only a modest erosion of the clause, if any, will take place. The child, through the use of video, will not be obliged to see the defendant or to be exposed to the usual courtroom atmosphere. Nevertheless, the defendant as well as the judge, the jury, and the spectators, will see and hear her clearly. Adequate opportunity for cross-examination will be provided. This is enough to satisfy the demands of the confrontation clause. If it is not, it represents a deserved exception. It is more than Wigmore would require. Everything but "eyeball-to-eyeball" confrontation will be provided. No case has held eye contact to be a requirement. It is not demanded when a witness "confronts" a defendant in the courtroom. No court rule requires eye contact and courtroom distances sometimes make such contact impossible. Benfield required face-to-face confrontation but did not define that requirement as including eye contact. To the extent that Benfield would deny the opportunity to use video equipment as *433 proposed in the present case, I am in disagreement with its conclusions.
The child in the present case said that she could testify. The probable and possible consequences of that testimony, however, could not have been known to her. Indeed, her willingness to testify was grounded upon fear and misconception. She believed her stepfather would kill her for revealing his abuse and felt that she would be safe only if he went to jail. She thought, erroneously, that he would be sent to jail only if she testified in court. The risk her face-to-face testimony imposes is too great to be permitted. The concern which the court must have for her, and for all children, dictates a different course, when that course will not significantly impair the rights of the defendant.
In Ohio v. Roberts, supra, the Court "recognized that competing interests, if `closely examined,' may warrant dispensing with confrontation at trial." 448 U.S. at 64, 100 S.Ct. at 2538. N.J. Youth and Family Services, supra, 185 N.J. Super. at 7, is to the same effect. See also Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). Child abuse cases present such interests. The growing awareness of the social consequences of child abuse has resulted in the enactment of significant criminal statutes and has been underlined by our Supreme Court in State v. Hodge, 95 N.J. 369 (1984):
Crime within the family is one of the most deeply troubling aspects of contemporary life. Governor Kean recently established a task force to study the problem of child abuse. The United States Attorney General has instituted a Task Force on Family Violence to study the national dimensions of this problem. The Legislature has therefore graded sexual crimes that occur within the family differently from those occurring in other contexts. When criminal sexual conduct involves a victim who is `at least 13 but less than 16 years old,' and the `actor is a foster parent, a guardian, or stands in loco parentis within the household,' N.J.S.A. 2C:14-2(a)(2)(c), even though there may have been no force, the silent abuse inflicted deeply threatens the fabric of society. Accordingly, the Legislature graded this crime as one of the first degree. N.J.S.A. 2C:14-2(a). [at 377]
Truth is the ultimate quest. This is the proper interest of the prosecution, the defense, the jury, the judge and all of our *434 society in all judicial proceedings. Philosophically, it may be argued that truth is not an absolute. If so, that conclusion does not diminish the premise. Truth, though unattainable in all of its labyrinthic extremities, must always be the judicial goal. It is the purpose undergirding our rules of evidence. Evid.R. 5 most appropriately in the present setting, provides:
The adoption of these rules shall not bar the growth and development of the law of evidence in accordance with fundamental principals to the end that the truth may be fairly ascertained.
In the present case, it is the opinion of the State's forensic psychiatrist that the video presentation of the child victim's testimony will enhance, not diminish, the prospect of obtaining the truth. His reasons for reaching that conclusion are convincing. The ambivalent position in which the child must find herself, her fear, guilt, and anxiety, become doubly oppressive when she is subjected to the courtroom atmosphere. Those factors become less burdensome through the use of video. "Proving Parent-Child Incest: Proof at Trial Without Testimony in Court by the Victim," 15 U. of Mich. Journal of Law Reform 131 (1981), corroborates this conclusion:
Making the child incest victim testify in court has another distinct failing: it produces unreliable evidence. The trier of fact in an incest case faces a dilemma. Its determination of whether abuse occurred rests primarily upon the testimony of the child victim, but child witnesses are widely acknowledged to be unhelpful. They have a subjective sense of time, an inaccurate memory  especially with regard to experience such as incest which are repeated over time, and limited ability to communicate what they do not understand and recall. These natural disabilities tend to intensify when the child is afraid or under emotional stress as a child may regress to a less mature state or withdraw entirely. Incest victims are especially likely to suffer from these disabilities because they are young and find current pretrial and courtroom procedures especially traumatic. [at 137]
....
The incest victim, unlike the witness to intrafamilial violence or the victim of physical abuse, is not only the child of the defendant nor merely his adversary witness, but also his accomplice. Her confusion and sense of guilt at her involvement is thus potentially far greater than other victim's experience. It seems the trauma to the parent-child incest victim is greater, her usefulness as a witness is less; the victim is likely to have positive ties to the perpetrator; and other family members are likely to be involved. No other case, however similar in some respects, shares all of these complicating factors. [at 142-151]
*435 Thus, the use of video which enhances the quality of a child victim's testimony, serves the essential demand for truth while satisfying the constitutional mandate.

C. The Court's Control of Cross-Examination.
Confrontation's central purpose is provision of the opportunity for cross-examination. Douglas v. Alabama, supra. Like the right of confrontation, however, the right of cross-examination is not without limitations. "The trial court has broad discretion in determining the proper limitations of cross-examination of a witness whose credibility is in issue." State v. Cranmer, 134 N.J. Super. 117, 122 (App.Div. 1975); State v. Pontery, 19 N.J. 457, 472-473 (1955); State v. Zwillman, 112 N.J. Super. 6, 17-18 (App.Div. 1970), certif. den. 57 N.J. 603 (1971).
In the present case, there is, in fact, no curtailment of cross-examination, only a restriction upon the means of transmitting questions and answers. That restrictive action is less significant than the action taken in State v. Cranmer. In that case, a defendant charged with impairing the morals of an eight-year-old boy, who became so emotionally distressed during cross-examination that he could not continue, was denied any opportunity for further cross-examination. The Appellate Division held that the circumstances permitted the limitation upon cross-examination and did not improperly abridge the right of confrontation. In United States v. Toliver, supra, the court permitted the State's testimony to continue in the absence of an ill defendant. The action was affirmed on the ground that the evidence was not consequential. The use of video equipment is less consequential. It's use may be permitted as the discretionary action of the trial court in this case.

D. Waiver of the Right of Confrontation.
The State argues that defendant has waived his right of confrontation by threatening to kill the child victim if she revealed his activities. In addressing this issue, it is assumed, *436 arguendo, that a videotaped presentation will not satisfy the requirements of the confrontation clause. The court also adopts the conclusion that the child cannot testify in court without risking serious emotional damage. Finally, the court takes the position that a waiver may occur even though the child is an available witness who can testify but should not because of the risk involved. That risk, in short, is one to which a child victim in a sexual abuse case should not be subjected and, consequently, one which cannot be imposed as a means of defeating a waiver claim.
A defendant may waive his Sixth Amendment right of confrontation. United States v. Carlson, 547 F.2d 1346, 1358 (8 Cir.1976), cert. den. 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). In Carlson, a witness testified before a grand jury but refused to testify at trial. F.B.I. agents then testified, based upon conversations with the witness, that his refusal was the result of threats made by defendant. For this reason the grand jury testimony of the witness was admitted into evidence. The Court of Appeals affirmed the trial court's ruling that defendant had waived his right of confrontation, saying "the sixth amendment does not stand as a shield to protect the accused from his own misconduct or chicanery." 547 F.2d at 1359. It concluded that public policy was served by a rule permitting the admission of an out-of-court statement by a witness who has been intimidated by a defendant.
In United States v. Balano, 618 F.2d 624 (10 Cir.1979), cert. den. 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980), the court said: "under the common law principle that one should not profit by his own wrong, coercion can constitute voluntary waiver of the right of confrontation." It added:
We recognize that often the only evidence of coercion will be the statement of the coerced person, as repeated by government agents. Consequently, a reasonable doubt standard for admission might well preclude a finding of waiver, no matter how reprehensible the defendant's conduct. On the other hand, we do not wish to emasculate the Confrontation Clause merely to facilitate government prosecutions. Thus, a prima facie showing of coercion is not enough. We hold, therefore, that before permitting the admission of grand jury testimony of witnesses who will not appear at trial because of a defendant's *437 alleged coercion, the judge must hold an evidentiary hearing in the absence of the jury and find by a preponderence of the evidence that the defendant's coercion made the witness unavailable. [at 629]
The Court of Appeals found that the waiver determination was supported by "sufficient evidence." The trial court heard the testimony of the witness himself who, while refusing to discuss his reasons for not testifying, reiterated the truthfulness of his grand jury testimony. An FBI agent then testified to his conversations with the witness, indicating the circumstances surrounding various threats made against him by or on behalf of the defendant, if he testified, and his resulting fear. This was held to be sufficient evidence to support the claim of waiver.
In Black v. Woods, 651 F.2d 528 (8 Cir.1981), cert. den. 454 U.S. 847, 102 S.Ct. 164, 70 L.Ed.2d 134 (1981), a witness refused to testify in a murder trial because she was afraid of being killed by defendant. Defendant had arranged a prior killing of another witness to prevent her from testifying against him in a robbery case. The murder witness was put on the stand by the prosecution but refused to testify and was held in contempt. The circuit court opinion does not set forth the evidence received at the trial level on the waiver question, but states:
We agree with the state court that Black forfeited his confrontation right by a pattern of conduct that resulted in Link's fear which we find to be reasonable under the circumstances. The record is replete with Black's threats and attempts to intimidate against Link and others. Black had physically abused Link and threatened to kill her if she did not do what she was told. [651 F.2d at 531]
The court rejected the argument that there was no evidence of an express threat addressed to Link by Black, or anyone acting on his behalf, saying that the argument "ignores the facts of the case and the demonstrated tendencies of Black." It approved a comment of the Minnesota Supreme Court that Black's motive for killing the witness in the robbery case, namely, to assure himself of her silence, "provided Link with the most graphic and explicit threat possible if she testified against him." Id. at 532.
*438 In the case at bar, the evidence of the defendant's threat to kill the child victim is hearsay. It consists of the victim's statement to Doctor Sadoff as repeated by him at the pretrial hearing. It is not admissible if the Rules of Evidence apply.
The question presented at the pretrial hearing was whether videotaped testimony of the victim would be admissible in evidence. The objection to its admission was based upon the claim that it would violate the Confrontation Clause. One answer to this claim is that the right of confrontation was waived by the defendant by reason of his threat. If there was a waiver, the videotaped testimony would be admissible without consideration of that right.
Evid.R. 8(1) states in part:
When the ... admissibility of evidence ... is stated in these rules to be subject to a condition, and the fulfillment of the condition is in issue, that issue is to be determined by the judge. In his determination the rules of evidence shall not apply except for R. 4 or a valid claim of privilege.
Under this rule hearsay evidence is admissible for the purpose of making the R. 8(1) decision. State v. Moore, 158 N.J. Super. 68 (App.Div. 1978); Hill v. Cochran, 175 N.J. Super. 542 (App. Div. 1980). The hearsay evidence of Doctor Sadoff is therefore admissible, provided Evid.R. 8(3) does not apply. That rule provides in part:
Where by virtue of any rule of law a judge is required in a criminal action to make a preliminary determination as to the admissibility of a statement by the defendant, the judge shall hear and determine the question of its admissibility out of the presence of the jury. In such a hearing the Rules of Evidence shall apply and the burden of proof as to admissibility of the statement is on the prosecution.
Without more, this provision would require the Rules of Evidence to be applied and Doctor Sadoff's testimony would be excluded. It is apparent, however, from a reading of Evid.R. 8(3) in its entirety, that it does not apply. The balance of that rule reads as follows:
If the judge admits the statement, he shall not inform the jury that he has made a finding that the statement is admissible, and he shall instruct the jury that they are to disregard the statement if they find it is not credible. If the judge subsequently determines from all of the evidence that the statement is not admissible, he shall take appropriate action.
*439 It therefore appears that Evid.R. 8(3) is applicable only when the "admissibility of a statement by the defendant" is a statement which is intended to be introduced at the trial. That was not the purpose of the hearing in the present case. The evidence of the threat to kill was introduced only for the purpose of supporting the claim of waiver, not for trial purposes. Consequently, Evid.R. 8(3) does not apply. Neither do the Rules of Evidence, except Evid.R. 4 and rules relating to privilege.
This conclusion is supported by U.S. v. Mastrangelo, 693 F.2d 269 (2 Cir.1982). In that case grand jury testimony of a witness was accepted into evidence after the witness had been killed while on his way to testify. The court, citing Carlson and Balano as well as numerous other cases, held that the misconduct of a defendant could constitute a waiver of the Confrontation Clause. It said:
Since Mastrangelo's possible waiver of his sixth amendment right is a preliminary question going to the admissibility of evidence, the hearing will be governed by Fed.R.Evid. 104(a), which states that the exclusionary rules, excepting privileges, do not apply to such proceedings. Thus, hearsay evidence, including Bennett's grand jury testimony, will be admissible, as will all other relevant evidence. [at 273]
United States v. Thevis, 665 F.2d 616 (5 Cir.1982), cert. den. 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982) is to the same effect. The evidence rule was not mentioned in Carlson or Balano or Black, all of which decided the waiver issue, however, on the basis of hearsay testimony. It is apparent that they relied upon the same approach.
It might be asserted that what is sought is not to determine the "admissibility of evidence," but rather to decide the manner of production of that evidence. It could be said that what is to be resolved is not whether the statement of the child victim is to be admitted, but rather to decide whether that statement is to be established by in-court testimony or by videotaped proofs. The difference is vital: If the concern is the manner of production of evidence as opposed to its basic admissibility Evid.R. 8(1) does not apply. That rule pertains only to issues concerning *440 "the qualification of a person to be a witness, or the admissibility of evidence, or the existence of a privilege." If Evid.R. 8(1) is not applicable, the hearsay evidence of the defendants' threat to kill is not admissible. The threat could then be proved only if the child victim appeared in court and testified against the defendant. This would be self-defeating. It would vitalize the unacceptable: permitting the defendant to gain advantage by his reprehensible conduct. This interpretation of Evid.R. 8(1) would thwart the truth. The Rules of Evidence as stressed by Evid.R. 5, are designed for the opposite purpose.
Doctor Sadoff's testimony is therefore admissible. One problem remains: What is the burden of proof in the waiver hearing? Balano held that waiver might be shown by a "preponderance of the evidence." 618 F.2d at 629. Thevis required "clear and convincing" evidence. 665 F.2d at 631. Mastrangelo adopted the preponderance of evidence test but remanded the case for a further hearing on the waiver question, instructing the trial judge to make findings under the clear and convincing standard as well. The court discussed the proof issue in the following language:
[T]he Supreme Court precedents are mixed. While the Court has held the preponderance of evidence test applicable to suppression hearings involving possible misconduct by the government, Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 627, 30 L.Ed.2d 618 (1972) (voluntariness of confession); United States v. Matlock, 415 U.S. 164, 177-78, 94 S.Ct. 988, 996, 997, 39 L.Ed.2d 242 (1974) (consent to search), it has applied the clear and convincing standard to questions of admissibility involving constitutional requirements going to the reliability of evidence, United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149 (1967) (circumstances surrounding identification at a showup).
These decisions are thus not dispositive. Since the right of confrontation is closely related to the reliability of testimonial evidence, the clear and convincing test may well apply to issues of admissibility arising under it. However, waiver by misconduct is an issue distinct from the underlying right of confrontation and not necessarily governed by the same rules concerning burden of proof. We see no reason to impose upon the government more than the usual burden of proof by a preponderance of the evidence where waiver by misconduct is concerned. Such a claim of waiver is not one which is either unusually subject to deception or disfavored by the law. Compare McCormick, McCormick's Handbook on the Law of Evidence § 340 (2d ed. 1972). To the contrary, such *441 misconduct is invariably accompanied by tangible evidence such as the disappearance of the defendant, disruption in the courtroom or the murder of a key witness, and there is hardly any reason to apply a burden of proof which might encourage behavior which strikes at the heart of the system of justice itself. [693 F.2d at 273]
In deciding whether the rule is to be "preponderance" or "clear and convincing" in present circumstances, we must weigh once again the confrontation right of the defendant against the "right" of a child victim to testimonial protection. It has been decided above that there is no absolute right of confrontation, that the videotaped testimony of the child victim in a sexual abuse case is admissible, either because it does not violate the Confrontation Clause or because it represents a very modest exception to that right. The purpose of the R. 8 hearing therefore does not deal with an absolute constitutional mandate. Further, since the hearing may be said to involve, indirectly, the reliability of the videotaped evidence, reliability is enhanced by the minimal incursion, if any, into the confrontation clause. It was the opinion of Doctor Sadoff, corroborated by other authorities, that the video presentation would be more likely than in-court testimony to produce the truth. As in Mastrangelo, this court sees "no reason to impose upon the government more than the usual burden of proof by a preponderance of the evidence where a waiver by misconduct is concerned."
Applying that test here, I conclude that the State has supported the claim of waiver by sufficient evidence. The statement of the child to the psychiatrist was made in a setting of confidence. It was not made because the child knew that her statement could effect a waiver of the Confrontation Clause. On the contrary, it was the basis for her mistaken willingness to testify in court. It was the opinion of Doctor Sadoff that the child's fear, occasioned by the threat, was real. He also found that she was capable of telling the truth. No contradictory testimony was presented by the defendant. Under the circumstances, the proofs support the claim of waiver. The Confrontation Clause is not available to the defendant.

*442 E. Conclusion.
The use of videotaped testimony of the child victim in this case will be permitted because:
(a) It will not unduly inhibit the defendant's right of confrontation and therefore does not violate our constitutional provisions.
(b) The testimony of a child victim in a child sexual abuse case may be presented by videotape as an exception to the confrontation requirement.
(c) The use of the video technique is a permissible restriction of cross-examination.
(d) The defendant in this case has waived his right of confrontation.
The videotaped presentation shall be subject to the conditions set forth in the schedule annexed to this opinion.

APPENDIX

Conditions Imposed on the Use of the Videotaped Presentation
1. The testimony of the child victim shall be taken in a room near the courtroom from which video images and audio information can be projected to courtroom monitors with clarity.
2. The persons present in the room from which the child victim will testify (testimonial room) shall consist, in addition to the child, only of the prosecuting and defense attorneys together with the cameraman.
3. The only video equipment to be placed in the testimonial room shall be the video camera and such tape recording equipment as may be appropriate to carry out the conditions herein set forth.
4. The courtroom shall be equipped with monitors having the capacity to present images and sound with clarity, so that the jury, the defendant, the judge, and the public shall be able to see and hear the witness clearly while she testifies. The following monitors are deemed to be satisfactory insofar as screen size is concerned: Jury  25"; public  18"; defendant  10"; judge  7".
5. It shall not be necessary to conceal the video camera. A videotape shall be made containing all images and all sounds projected to the courtroom which tape shall be introduced in evidence as a state exhibit.
6. No bright lights shall be employed in the testimonial room.
7. Color images shall be projected to the courtroom by the video camera.
8. The video camera shall be equipped with a zoom lens to be used only on notice to counsel who shall have an opportunity to object.
9. The video camera, the witness and counsel shall be so arranged that all three persons in the testimonial room can be seen on the courtroom monitors *443 simultaneously. The face of the witness shall be visible on the monitors at all times, absent an agreement by counsel or direction by the court for some other arrangement. The placement of counsel in the testimonial room shall be at the discretion of each counselor.
10. The defendant and his attorney shall be provided by the State with a video system which will permit constant private communication between them during the testimony of the child witness.
11. An audio system shall be provided connecting the judge with the testimonial room to the end that he can rule on objections and otherwise control the proceedings from the bench.
12. In the event testimony is being recorded by use of a mechanical system, the video monitors or one of them shall be so connected to that equipment as to record all of the child witness's testimony.
13. In the event the proceedings are being recorded by a court stenographer, that stenographer shall remain in the courtroom and shall rely upon the video monitors for the purpose of recording the testimony of the child victim.
14. All video equipment, the videotape and the cameraman, shall be provided by and at the expense of the State.
15. The oath of the child witness may be administered by the judge using the audio equipment, or by the court clerk who may enter the testimonial room for that purpose only, or otherwise as the judge may direct.
16. The testimony of the child victim shall be interrupted at reasonable intervals to provide the defendant with an opportunity for person-to-person consultation.
17. The trial court, before the child victim testifies, shall provide the jury with appropriate instructions concerning the videotape presentation.
18. These conditions have been adopted by the court after counsel has been provided with the opportunity to make objections to them.
NOTES
[1] It has been addressed by Judge Edwin H. Stern in a New Jersey murder case. He permitted the use of video equipment in that case, stating his reasons from the bench. The transcript of his opinion has been supplied to counsel and the court.
[2] Evid.R. 63(3) permits prior testimony of an unavailable witness. It does not fit the circumstances of this case.